[Civ. No. 26797. Fourth Dist., Div. One. Aug. 10, 1983.]

ESCONDIDO IMPORTS, INC., Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

[Civ. No. 26802. Fourth Dist., Div. One. Aug. 10, 1983.]

BILLY D. NORMAN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

F. David Stevenson and Roy B. Garrett for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Janelle B. Davis, Deputy Attorney General, for Defendant and Respondent.

OPINION

**COLOGNE, Acting P. J.**—In cases consolidated for appeal, Billy D. Norman, doing business as Norman's Auto Dismantlers, a licensed automobile dismantler, and Escondido Imports, Inc., a licensed automobile dealer (both here referred to as licensee), appeal a judgment granting summary judgment to the state Department of Motor Vehicles (DMV) and denying summary judgment to the licensee on its complaint for declaratory relief. The gist of the complaint is Vehicle Code[1] section 4456.1, providing for an adminis-

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

trative service fee, and section 9263, providing for an investigation service fee, assessed against the licensee in certain events without advance notice or hearing, are unconstitutional because they represent a taking of a significant property interest without notice and an opportunity to be heard (U.S. Const., 14th Amend.; Cal. Const., art. I, § 17).

Generally, the statutes in question relate to reporting requirements detailed as to timing, and require the licensees to pay DMV $15, in the case of automobile dismantlers (§ 9263), or $5, $10, or $15, in the case of automobile dealers (§ 4456.1), when the licensee fails to submit in a timely fashion the required documents to DMV (appens. A and B contain somewhat more detailed descriptions of the statutory schemes involved and how they operate). The fee is assessed administratively by DMV usually by comparing the postmark or received stamp date with respect to the particular document with the dates stated in the document itself. An informal process exists by which the licensee may question and seek correction by DMV of the fee assessment, and corrections have been made by this means.

Failure to pay the fee is cause for disciplining the licensee (§§ 4456.1, subd. (d), 11509, subd. (a)(10), 11705, subd. (a)(8)). Any such disciplinary action is governed by the Administrative Procedure Act (Gov. Code, § 11500 et seq.; § 11509, subd. (c); § 11705, subd. (c)). At the hearing, the licensee may contest the allegations concerning nonpayment of administrative service fees, including the validity of the assessment, the arithmetic computations or the allegations of nonpayment.

Violations of the reporting requirements also may be the subject of a criminal prosecution for a misdemeanor or infraction (§ 11520, subd. (d); § 40000.1).

The licensees' concern here is the DMV can assess the fees against the licensee and revoke the license if the licensee fails to pay the fees without providing an opportunity to challenge the validity of the initial determination that a violation in fact occurred. The licensees also claim failure to pay the assessment will result in a hearing under the applicable section (§ 11509, subd. (a)(10), for dismantlers; § 11705, subd. (a)(8), for dealers) wherein the only issue presented at the hearing is whether the licensee failed to pay the fine. The uncontroverted declaration of an attorney for DMV showing the merits of the fee can be contested, combined with the provisions making the Administrative Procedure Act applicable (§ 11509, subd. (c); § 11705, subd. (c)), demonstrate the last stated concern is unfounded.

We first address the assertion due process requires a preassessment hearing at which the licensee may challenge the validity of the initial determination that a violation in fact occurred.

How much process must be accorded depends upon the nature and stage of the proceedings, the temporary or permanent nature of the deprivation and the significance of the property interest involved. "We start with the basic proposition that in every case involving a deprivation of property within the purview of the due process clause, the Constitution requires some form of notice and a hearing." (*Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713].) The United States Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893, 902].) Justice Tobriner, however, once stated: "Due process cannot become a blunderbuss to pepper proceedings with alleged opportunities to be heard at every ancillary and preliminary stage, or the process of administration itself must halt. Due process insists upon the opportunity for a fair trial, not a multiplicity of such opportunities. Due process is not a frozen Draconian code but the concept that in some one of multifarious procedures the accused shall be afforded before judgment the right to a full hearing." (*Dami* v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 144, 151 [1 Cal.Rptr. 213].)

We are taught in *Mathews* v. *Eldridge, supra,* 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893], that identification of the specific dictates of due process generally requires consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See e.g., *Goldberg* v. *Kelly, supra,* at 263-271." (424 U.S. at p. 335 [47 L.Ed.2d at p. 33, 96 S.Ct. 903].)

*Mathews* considered termination of social security disability benefits without first conducting an evidentiary hearing. The agency, in *Mathews,* merely sent a letter to the recipient including a statement of the reasons for the termination of the disability benefit. Balancing the various factors, *Mathews* upheld the statute under the due process challenge.

In *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162], imposition of five-day suspensions on civil service employees without prior hearing was permitted, the court using not only the *Mathews* analysis, but also considering the following passage from *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]: "' . . . In balancing such "competing

interests involved" so as to determine whether a particular procedure permitting a taking of property without a *prior* hearing satisfies due process, the high court has taken into account a number of factors. Of significance among them are the following: whether predeprivation safeguards minimize the risk of error in the initial taking decision, whether the surrounding circumstances necessitate quick action, whether the postdeprivation hearing is sufficiently prompt, whether the interim loss incurred by the person affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property proves to have been wrongful. . . .' (15 Cal.3d at p. 209; italics in original)." (See 22 Cal.3d at p. 561.)

We consider these *Mathews-Skelly* factors as follows:

First, we believe the private interest involved in the assessment of the $5, $10, or $15 service fee is relatively insignificant, particularly when compared to the private importance of such things as disability payment termination or short term suspension from work as in *Mathews, supra,* and *Civil Service Assn., supra.* Though the licensees raise the aura of imminent criminal prosecution or disciplinary action against the license as a result of nonpayment of the fee, the record does not support that hypothesis. In fact, considering the showing DMV makes adjustments when corrections are needed, the record supports the view this correcting practice is and will be followed. The presence of the Administrative Procedure Act remedial process obviates any direct concern for prosecution or disciplinary action against the licensees as a result of nonpayment of the fee. The private interest directly involved here is the property interest involved in the licensee's loss of $5, $10 or $15, not the licensee's liberty interest or interest in making a livelihood. The latter two interests are involved, at most, only speculatively and indirectly.

The second consideration under *Mathews, supra,* 424 U.S. 319, risk of an erroneous deprivation of the affected interest is minimal as well. Each licensee is in control of the operative facts giving rise to the need to comply as well as the timing of the compliance with the statute. The licensee knows, for example, of the sale of the vehicle or of its acquisition for dismantling and the licensee is in charge of filling out and delivery of the required papers. The dates when these things are done or to be done are not reasonably susceptible to factual dispute.

The situation of the licensee is much like that of the state employee in *Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823]. *Willson* held the state employee could be terminated without prere-

moval hearing safeguards as spelled out in *Skelly, supra,* 15 Cal.3d 194, upon being absent without leave for five consecutive working days. *Willson* noted the statute there involved gave "fair notice of exactly when, why and how an employee constructively resigns his position . : . and in the nature of such matters [5 working days of A.W.O.L.], conduct giving rise to automatic resignation is rarely, if ever, susceptible to factual dispute." (113 Cal.App.3d at p. 317.) Thus, *Willson* concluded "the risk of erroneous applications of the statute is nominal and would in any event scarcely be diminished by provision for a preremoval hearing." (*Ibid.*)

We consider the statutory scheme involved here to give the same fair and exact notice to the licensees of their duties as did the statute in *Willson.* The matter is not susceptible to more than a nominal risk of erroneous application of the statute, and thus the licensees' risk of erroneous deprivation is minimal.

Finally, we consider the third *Mathews* factor, the government's interest, including the function involved and the fiscal and administrative burdens the additional procedural requirement would entail. The state has a substantial interest in receiving the prescribed information accurately and on time in order to maintain complete and up to date records concerning the number, nature and ownership or right to possession of vehicles licensed and registered in the state and to facilitate the detection and recovery of stolen vehicles. Records about sold vehicles and vehicles acquired for dismantling are in furtherance of achieving these goals. Though the record before us does not contain an indication of the numbers of transfers and events subject to the reporting requirements, it is apparent the numbers are enormous and the fiscal and administrative burdens of providing an additional procedural requirement in every case of an assessment would likewise be great.

We conclude, given the great interest of the state and the burden on it of applying an additional procedural requirement, when compared with the minimal private interest directly involved and the low probability of error in the assessment, due process does not require a preassessment hearing as the licensee requests.

There are, as previously noted, formal means for a hearing and review available under the Administrative Procedure Act in which to contest the basis of the fees in a proceeding against the licensee for nonpayment, or, after payment of the assessment, the licensee may make a request for refund

under section 42231,[2] file a claim with the state Board of Control (Gov. Code, § 905.2) and, if necessary, bring a court action by which alleged errors may be reviewed with no jeopardy to the license or to liberty. The procedure here calls for a notice and hearing before license revocation and, since failure to pay the penalty is a cause of license revocation, the validity of the assessment would be a principal issue in the proceeding.

The notice assessing a fee for failing to comply with the statute shifts the burden to contest onto the recipient and provides the recipient with a telephone number to use in the event of a disagreement as to the assessment. The recipient then has the opportunity to question the validity of the assessment fee. At this stage, the recipient has notice of the amount due, the reason, i.e., failure to file within statutory time limit, and an opportunity to respond to the assessing agency, the DMV. This process is not unlike many other statutory schemes providing penalties for failing to comply with the statutes. Due process is thus accorded.

There is no violation of due process in the statute here challenged. The procedure is fair and reasonable.

Judgment affirmed.

Staniforth, J., and Wiener, J., concurred.

A petition for a rehearing was denied August 26, 1983, and appellants' petition for a hearing by the Supreme Court was denied October 5, 1983.

---

APPENDIX A

DISMANTLERS—STATUTORY SCHEME
AND ADMINISTRATION

Section 9263 provides: "Any automobile dismantler or other person who fails to comply with the provisions of Section 11520 shall pay an investigation service fee of fifteen dollars

---

[2]"Whenever any application is made under this code and the application is accompanied by any fee which is excessive or not legally due, or whenever the department in consequence of any error either of fact or of law as to the proper amount of any fee or any penalty thereon or as to the necessity of obtaining any privilege under this code collects any fee or penalty which is excessive, erroneous, or not legally due, the person who has paid the erroneous or excessive fee or penalty, or his agent on his behalf, may apply for and receive a refund of the amount thereof as provided in this article, or the department may refund the same within three years after the date of the payment or collection."

($15)." Generally, section 11520 requires licensed automobile dismantlers "who acquired, for the purpose of dismantling, actual possession, as a transferee, of a vehicle" to notify DMV, to transmit ownership documents and to wait 10 days before dismantling a vehicle.[1] The dismantler must send a "notice of acquisition" to DMV, with a copy to the Department of Justice, within five days after acquiring a vehicle which will be dismantled. The dismantler cannot begin dismantling a vehicle until 10 days have elapsed after mailing the notice of acquisition. Within 90 days after the date of acquisition, the dismantler must send the vehicle's documents evidencing ownership (or certified letter of demand for the documents) and license plates (or certificate of license plate destruction) to DMV.

Imposition of the investigation service fee in connection with the notice of acquisition occurs on the basis of a comparison of the postmark on the envelope used to mail the notice with the date of acquisition shown on the notice form, or where there is no postmark, by subtracting five days from the date on the DMV received stamp and comparing with the date of acquisition shown on the notice form.

The $15 investigation service fee under section 9263 applies to any violation of section 11520. Moreover, section 11509, subdivision (a)(10), provides: "(a) The department, after notice and hearing, may suspend or revoke the license issued to an automobile dismantler

---

[1] Section 11520 reads: "(a) A licensed automobile dismantler who acquired, for the purpose of dismantling, actual possession, as a transferee, of a vehicle of a type subject to registration under this code:

"(1) Shall within five calendar days, not including the day of acquisition, mail a notice of acquisition to the department at its headquarters.

"(2) Shall within five calendar days, not including the day of acquisition, mail a copy of the notice of acquisition to the Department of Justice at its headquarters.

"(3) Shall not begin dismantling until 10 calendar days have elapsed after mailing the notice of acquisition. In the alternative, dismantling may begin any time after the dismantler complies with the provisions of paragraph (4).

"(4) Shall deliver to the department, within 90 calendar days of the date of acquisition, the documents evidencing ownership and the license plates last issued for the vehicle: Proof that a registered or certified letter of demand for the documents was sent within 90 days of the date of acquisition to the person from whom the vehicle was acquired may be submitted for documents that cannot otherwise be obtained. A certificate of license plate destruction, when authorized by the director, may be delivered in lieu of the license plates.

"(5) Shall maintain a business record of all vehicles acquired for dismantling. The record shall contain the name and address of the person from whom such vehicle was acquired; the date the vehicle was acquired; license plate number last assigned to the vehicle; and a brief description of the vehicle, including its make, type, and the vehicle identification number used for registration purposes. The record required by this subdivision shall be a business record of the dismantler separate and distinct from the records maintained in those books and forms furnished by the department.

"(b) The provisions of paragraphs (1) and (2) of subdivision (a), shall not apply to vehicles acquired pursuant to Section 11515 or 22705 of this code or Sections 3071, 3072, or 3073 of the Civil Code.

"(c) Any person, other than a licensed dismantler, desiring to dismantle a vehicle of a type subject to registration under this code shall deliver to the department the certificate of ownership, registration card, and the license plates last issued to the vehicle before dismantling may begin.

"(d) Any person who violates this section is guilty of a misdemeanor. Any person not licensed under the provisions of this chapter who is convicted under this section shall be *punished upon a first conviction by imprisonment in the county jail for not less than five* days or more than six months or by a fine of not less than fifty dollars ($50) nor more than five hundred dollars ($500) or by both such fine and imprisonment; and upon a second or any subsequent conviction, by imprisonment in the county jail for not less than 30 days nor more than one year or by a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000) or by both such fine and imprisonment."

upon the determination that the person to whom the license was issued is not lawfully entitled thereto or has committed any of the following acts:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(10) Has failed to pay, within 30 days after written demand from the department, any fees or penalties due on vehicles acquired for dismantling which are not the subject of dispute. If the dismantler disputes the validity of such fees or penalties, the 30-day period shall not commence until the department, after review, has determined the fee or penalty to be due."

Thus, a dismantler's failure to pay the $15 investigation service fee within the applicable 30-day period is a ground for suspension or revocation of his license. It is also a misdemeanor to violate section 11520 (§ 11520, subd. (d)).

Both the licensee and the DMV point out the record shows DMV informally makes adjustments to investigation service fee assessments on the basis of requests for corrections by the dismantler. The billing form used by DMV invites any questions regarding the billing to be made by telephoning a given number.[2] Over the period May 1978, through June 1980, $225 in adjustments to six of the licensee's billings were made by DMV.

Moreover, the Administrative Procedure Act (Gov. Code, § 11500 et seq.) governs any disciplinary action by the DMV against the license for failure to timely pay the fees (§ 11509, subd. (c)). If the licensee elects to defend against the allegations in such a proceeding, the licensee may contest the allegation concerning the fees, including the validity of the assessment, the arithmetical computations or the allegation of nonpayment, and this may be done even though the licensee may not have sought an informal review of the assessment.

---

## Appendix B

### Dealers—Statutory Scheme and Administration

As a licensed automobile dealer, the licensee here has paid administrative service fees in the amounts of $5, $10, or $15 to DMV pursuant to section 4456.1 for failing to comply with section 4456 which imposes certain reporting requirements on the licensee. Generally, under section 4456, the licensee is required to use numbered "report-of-sale" forms issued by DMV. A copy of the report of sale is required to be displayed on the vehicle before it is delivered to the purchaser, and within 20 days of the date of sale the licensee must pay DMV all fees and penalties due to register or transfer registration of the vehicle. The sale must be reported according to section 5901 which requires the licensee to give notice of transfer to DMV within five days of any transfer of a vehicle. Section 5901 also requires for certain vehicles a report of the mileage shown on the odometer to be included on the form. Finally, section 4456 requires the application to register or transfer registration of a vehicle to be submitted by the licensee to DMV within 20 days from the date of sale in the case of new vehicles, or within 30 days if the vehicle is used.

Section 4456.1 requires the licensee to pay DMV the $5, $10, or $15 administrative service fee depending on the time the application or report is submitted. If, for example, a registration application for a new vehicle is not submitted within 20 days of the sale but is

---

[2]This billing form also contains the following statements:

"This is your statement of service fees due the Department for Notice of Acquisition and/or Dismantling Reports which were filed late or have not been received." (Located near top of form.)

"This is the first and only bill you will receive. Failure to pay within 30 days of this demand may be grounds for administrative action against your license." (Located at bottom of form.)

submitted within 30 days, the administrative service fee is $5. If the application is submitted over 30 days after the sale but before 40 days have passed, the administrative service fee is $10. For submission of the registration application for the new vehicle after 40 days, the administrative service fee is $15. A similar schedule of administrative service fees pertains to used vehicle sales and the submission of registration applications, with the amount being $10 if the submission is over 30 but before 40 days and $15 if the submission occurs over 40 days from the date of sale. The administrative service fee is imposed in terms of the timing requirements as shown in the following portion of DMV employee Suzanne E. Ross' declaration:

"The *dealer notice* is mailed to DMV Headquarters in Sacramento by the dealer and is determined to be untimely if the postmark date is more than five days after, but not including, the date of sale. If there is no postmark, the policy is to subtract 5 (five) days from the date received in the department.

"The registration *fees or application* is submitted to a Field Office which determines whether an ASF [administrative service fee] is to be assessed for late submission. This is determined by subtracting the number of days between the date of sale and the date the application was submitted, either by mail or personal delivery. If the number of days is in excess of the number of days allowed by law, an ASF is assessed. If registration fees or an application is determined to be in arrears, notification of such determination is sent to Headquarters by the Field Office . . . ."

Section 4456.1 also makes violations of the requirements of section 4456, as well as failure to submit the registration application within 40 days, a separate cause for disciplining the licensee. Section 4456.1, subdivision (f), further makes the nonpayment of an administrative service fee within 30 days after written demand from DMV a separate cause for disciplining the licensee. As in the case of dismantlers, any such disciplinary action is governed by the Administrative Procedure Act (Gov. Code, § 11500 et seq.; § 11613, subd. (c); § 11705, subd. (c)), and at the hearing, the licensee may contest the allegations concerning nonpayment of administrative service fees, including the validity of the assessment, the arithmetic computations or the allegations of nonpayment.

A licensee may seek an informal review of an assessment, causing adjustments to the administrative service fee assessment. The billing form used by DMV invites any questions concerning the billing to be made by telephoning a given number.[1] The record shows the licensee here had two $10 billings deleted by DMV due to licensee inquiries in December 1980 and April 1981.

---

[1]The billing form also contains the following statement:

"Based on information received from our Department of Motor Vehicles Field Office in connection with the report of sale transactions completed by your firm and/or report of sales notices received by this unit, the following administrative service fees have been determined to be due." (Located near top of form.)