[No. F006130. Fifth Dist. Apr. 7, 1986.]

SINGER COMPANY, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
COOL-TEMP AIR CONDITIONING COMPANY, Real Party in Interest.

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, Stephen C. Taylor and Edward D. Vogel for Petitioner.

No appearance for Respondent.

Parichan, Renberg, Crossman & Harvey and Richard J. Kern for Real Party in Interest.

## OPINION

**HAMLIN, J.**—Petitioner, the Singer Company (hereafter Singer), seeks a peremptory writ of mandate directing the Superior Court of Fresno County to vacate its order dismissing Singer's cross-complaint against real party in interest, Cool-Temp Air Conditioning Company (hereafter Cool-Temp). Singer had cross-complained for indemnity, contribution and declaratory relief arising from an action for personal injuries in which Singer is a defendant; Cool-Temp had previously settled plaintiffs' personal injury claims. Singer argues that respondent court abused its discretion (1) in failing to require Cool-Temp to comply with Singer's request for discovery relevant to the good faith of Cool-Temp's settlement before deciding that issue as to Singer and (2) in dismissing Singer's cross-complaint.

Singer's petition requires us to decide the fundamental question of whether a joint tortfeasor not a party to the lawsuit, either by complaint or cross-complaint, at the time another joint tortfeasor settles with the plaintiff is bound by an ensuing determination pursuant to Code of Civil Procedure section 877.6[1] that the settlement is in good faith. Fundamental constitutional principles of due process compel us to conclude that an unnamed joint tortfeasor whose potential liability is known, or reasonably should be known, to the settling parties but who is given no opportunity to be heard on the good faith of a prior settlement is not bound by a good faith determination; he has the right to challenge that finding once he has been brought into the litigation. We further hold that to make this challenge a realistic one, the party brought in later must have a concurrent right to engage in limited discovery against the settling defendant to elicit such evidence relevant to the determination of good faith as was available at the time of settlement, whether or not then actually presented. We will grant the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

This petition stems from consolidated actions for the wrongful death of two children in a fire at the residence of Manuel Silva, Sr., and Mary Silva (jointly the Silvas). The Silvas and Cool-Temp were defendants in each action. In addition, the Silvas cross-complained against Cool-Temp for indemnity. Singer was not named in either complaint or in any cross-complaint.

In deposition the Silvas testified their air conditioning unit had clicked on only moments before the fire was observed on May 2, 1982. Investigative reports indicated the fire had started when natural gas which had leaked and

---

[1]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

accumulated in the attic was ignited by a spark from the relay in the air conditioning unit. Cool-Temp had been responsible for servicing the Silvas' heating and air conditioning units for several years prior to the fire and had made several service calls to the Silvas' residence during that period. Witnesses observed the Cool-Temp service truck at the Silva residence shortly before the fire occurred.

In January 1984 an expert retained by the Silvas was deposed and testified that, in his opinion, a gasket on the gas regulator had failed, causing the leakage and contributing to the fire. The regulator, built by Singer, was about 24 years old at the time of the fire. An employee of Southern California Gas Company (hereafter SoCal Gas) had been deposed in October 1983 concerning standard replacement of regulators that old.

About March 1, 1984, Cool-Temp settled each wrongful death action (involving claims of damages of approximately $252,000 and $500,000, respectively) for $5,000. Thereafter Cool-Temp moved for determination that each such settlement was in good faith. The motion was granted, and both complaints and all cross-complaints against Cool-Temp were dismissed with prejudice.

Singer was first brought into the litigation when it was served as a cross-defendant in a cross-complaint filed by the Silvas in January 1985. Singer answered on March 1, 1985, and filed a cross-complaint for indemnity, contribution and declaratory relief against Cool-Temp, SoCal Gas and the Silvas. On March 25, Singer served Cool-Temp with two sets of interrogatories and three requests for identification and production of documents. By this discovery, Singer sought evidence relevant to those factors identified by the California Supreme Court in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] as appropriate guidelines in a trial court's assessment of the good faith of a settlement. Specifically, Singer sought information including "the extent and nature of Cool-Temp's involvement with the installation and servicing of the gas appliances in the Silvas' residence, the extent of Cool-Temp's insurance coverage regarding installation and servicing of appliances, documentation regarding the settlement and the financial condition of Cool-Temp at the time of settlement."

In April 1985 Singer's attorney wrote a separate letter to the attorney for each plaintiff offering to settle each party's wrongful death claim for $5,000 in exchange for a dismissal with prejudice. Each offer to settle was to remain open for a week, but Singer's attorney never received a reply from either offeree.

On April 11, 1985, and in reliance upon the trial court's 1984 determination that its settlement with plaintiffs was in good faith, Cool-Temp moved to dismiss Singer's cross-complaint. Singer opposed the motion and, during the pendency of the motion, again deposed the expert retained by the Silvas. At that time the expert testified it was "probable" that the fire was the result of a defect in the dual air conditioning/heating unit. He also admitted he did not know whether the gasket in the regulator was corroded or not, or even what type of gasket was in the regulator.

At the hearing on Cool-Temp's motion to dismiss, respondent court recognized Singer had the right, founded upon principles of due process, to challenge the good faith of Cool-Temp's settlement before that settlement could be raised as a bar to Singer's claim. Singer claimed, and Cool-Temp denied, that Singer's attempts to furnish respondent court relevant information necessary to evaluate the good faith of Cool-Temp's 1984 settlement were frustrated by Cool-Temp's "wrongful and bad faith refusal" to comply with Singer's discovery requests. However, despite Singer's repeated requests, respondent court refused to continue the hearing until a date after Cool-Temp provided the material information requested by the discovery propounded by Singer.

Respondent court ruled that the settlements between Cool-Temp and the individual plaintiffs were made in good faith and consequently dismissed Singer's first, second, fifth and sixth causes of action, those causes of action seeking partial indemnity, contribution, or declaratory relief. The court stated its opinion that under either *Tech-Bilt, supra,* 38 Cal.3d 488, or the previous standard, Singer had failed to satisfy its burden of proving the settlement was not in good faith.

Singer first contends a writ of mandate should issue because Cool-Temp's settlements with the plaintiffs were not in good faith and thus did not preclude Singer's cross-complaint for partial indemnity and contribution. Secondly, Singer contends the trial court failed to follow the requisite procedure specified in section 877.6, subdivision (a). Finally, Singer argues the trial court abused its discretion in ruling on the good faith of Cool-Temp's settlements before Singer could complete discovery relevant to the lack of good faith. Cool-Temp counters that because Singer's petition relied on inadmissible evidence, Singer failed to meet its statutory burden of proving a lack of good faith in Cool-Temp's settlements with plaintiffs.

## DISCUSSION

We preface our discussion with recognition of the basic principle that neither this court nor any other can absolutely bar the mere act of *filing* a

complaint or cross-complaint for contribution or partial indemnity. In the context of the instant case, therefore, we must proceed from the premise that, despite the legislative intent we glean from the statutes we shall discuss and notwithstanding the actual good faith, or lack thereof, of Cool-Temp's settlements with plaintiffs, Cool-Temp cannot be protected from being named a cross-defendant in a cross-complaint by a joint tortfeasor and from being consequently forced to respond in some manner. Therefore, the focus of our inquiry must be the disposition of that cross-complaint, seeking to accommodate (1) the policy favoring settlement of litigation as well as that favoring equitable sharing of tort liability, (2) the reasonable expectation of a settling tortfeasor that he will escape the burden and expense of prolonged litigation, and (3) the fundamental constitutional principle that no one shall be deprived of a substantial property right without due process of law. With this goal in mind, we turn to consideration of the statutory and decisional law governing joint and several tort liability in California.

In 1957, section 877 was added to the Code of Civil Procedure; that statute provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given *in good faith* before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort— [¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) *It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.*" (Italics added.)

When our Supreme Court in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] adopted the doctrine of comparative indemnity based on the equitable principle that joint tortfeasors should share the liability owed to plaintiff in proportion to their respective fault, the court discussed the effect of section 877: "Although section 877 reflects a strong public policy in favor of settlement, this statutory policy does not in any way conflict with the recognition of a common law partial indemnity doctrine but rather can, and should, be preserved as an integral part of the partial indemnity doctrine that we adopt today. Thus, while we recognize that section 877, by its terms, releases a settling tortfeasor only from liability for contribution and not partial indemnity, we conclude that from a realistic perspective the legislative policy underlying the provision dictates that a tortfeasor who has entered into a 'good faith' settlement (see *River Garden Farms, Inc.* v. *Superior Court* [(1972)] 26 Cal.App.3d 986 [103 Cal.Rptr. 498]) with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be

pressed by a concurrent tortfeasor. As the Court of Appeal noted recently in *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 . . .: 'Few things would be better calculated to frustrate [section 877's] policy, and to discourage settlement of disputed tort claims, than knowledge that such a settlement lacked finality and would lead to further litigation with one's joint tortfeasors, and perhaps further liability.' This observation is as applicable in a partial indemnity framework as in the contribution context. Moreover, to preserve the incentive to settle which section 877 provides to injured plaintiffs, we conclude that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury. [Citation omitted.]" (*Id.,* at pp. 603-604.)

Implicit in the Supreme Court's construction of section 877 is recognition of the inherent conflict between a strong public policy favoring settlements which are afforded finality if entered into in good faith and the frequently competing policy which favors an equitable sharing of costs among the persons liable for a tortious injury. This conflict had earlier been recognized and discussed eloquently and at length in *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498] (see also *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783 [118 Cal.Rptr. 837]). The court in *River Garden Farms* explained that the requirement a settlement be entered into "in good faith" is the requirement which operates to balance the otherwise competing interests of equitable sharing, on the one hand, and final settlement, on the other. (*River Garden Farms, supra,* at pp. 996-998. See also *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 506 [203 Cal.Rptr. 825]; 12 Cal.Jur.3d (1974) Compromise, Settlement, and Release, § 97, pp. 409-411; Roberts, *The "Good Faith" Settlement: An Accommodation of Competing Goals* (1984) 17 Loyola L.A. L.Rev. 841, 902-903 (hereafter cited as *The "Good Faith" Settlement*).)

After the decision in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, the court in *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434 [163 Cal.Rptr. 47], focusing primarily on the public policy which favors settlements, concluded that a settling tortfeasor is entitled to a pretrial determination that his settlement was in good faith. Such a determination is necessary to allow the settling tortfeasor to extricate himself from the continuing burden of litigation. Specifically, the court said: "A defendant who, in good faith, settles plaintiff's case against him is certainly entitled to the benefit of that bargain and is entitled to be free of the expenses of the trial and the hazards of further litigation. [¶] The best way to encourage settlements of cases involving alleged concurrent tortfeasors where

one of them wishes to settle with plaintiff and the 'good faith' of that settlement is, or may be, questioned, is to make a judicial determination of the merits of the good faith of the parties involved at the earliest possible time. *River Garden, supra,* 26 Cal.App.3d at page 998, explains: 'Good or bad faith is a question of fact in each case [citation omitted]. Only a trial court may reach a decision, guided by the evidentiary material provided to it,' subject, of course, . . . to appropriate motions for summary judgment and for judgment on the pleadings." (*Id.,* at p. 442.)

The procedure discussed by the court in *Fisher, supra,* i.e., a pretrial determination that a settlement is in good faith thus shielding the settling tortfeasor from any subsequent liability for contribution or partial indemnity, received legislative approval with the enactment of section 877.6. The Legislative Counsel's Digest to Assembly Bill No. 3425, which added section 877.6, noted that existing law did not specify whether a settling tortfeasor would be discharged from further liability before or after trial. The digest also pointed out that the bill specified "that any party has a right to contest the issue of the 'good faith' of a settlement at a noticed hearing . . . ." (Leg. Counsel's Dig. of Assem. Bill No. 3425 (1979-1980 Reg. Sess.). The statute thus enacted provided: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced. [¶] (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶] (d) The party asserting the lack of good faith shall have the burden of proof on that issue." A 1984 amendment added subdivision (e) permitting a party aggrieved by a determination of good faith to seek review of that determination by filing a petition for writ of mandate.

■ Singer contends the express language of section 877.6 entitles it to a hearing on the good faith of Cool-Temp's settlement with the plaintiffs. Specifically, Singer relies on the provision, "[a]*ny party* to an action where-

in it is alleged that two or more *parties* are joint tortfeasors *shall* be entitled to a hearing on the issue of the good faith of the settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, . . ." (Italics added.) Singer urges that it became "a party" entitled to a hearing when one of the original defendants cross-complained against it. Cool-Temp opposes such an interpretation as inconsistent with the provisions of section 877.6, subdivision (c). Specifically, Cool-Temp argues that, had the Legislature intended a good faith determination to affect only those party to it, the Legislature would have used in subdivision (c) the word "defendant" instead of "tortfeasor."

To support its proposition that the term "tortfeasor" was intentionally used in subdivision (c) to give section 877.6 a broad application, Cool-Temp cites *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45 [200 Cal.Rptr. 136]. There, plaintiff Widson had already named Harvester as a defendant in the main action when Harvester, in turn, filed a cross-complaint against Louetto Construction Co. for comparative or partial indemnity. Widson attempted to name Louetto as a defendant in the main action but was barred by the three-year statute of limitations. Widson then settled his claim against Louetto; the trial court determined the settlement was in good faith. Harvester contended on appeal that the trial court erred in finding a good faith settlement since Widson lacked an enforceable claim against Louetto. As to this contention, the court stated in part: "Thus the language [in sections 877 and 877.6] is not limited to a claim made by a plaintiff. Rather, it implies a recognition of liability arising from one set of circumstances regardless of who makes the claim, whether it be the plaintiff directly, the defendant or third party by way of cross-complaint. [¶] The *American Motorcycle* decision contemplates various situations in which the alleged tortfeasor is not named as a 'defendant.' The Supreme Court noted the general rule is: 'Under the governing statutory provisions a defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on comparative fault basis *even when such concurrent tortfeasor has not been named a defendant in the original complaint.*' [Italics in original.] [Citation omitted.] [¶] Finally, the strong public policy expressed in sections 877 and 877.6 is to encourage settlements by permitting a defendant or *cross-defendant* to settle directly with the plaintiff even though the cross-defendant's exposure is contingent upon the initial liability of the main defendant. A *cross-defendant* should be given the opportunity to evaluate the exposure and to buy his or her peace if he can. [Italics added.]" (*Widson, supra,* at pp. 57-58.)

We do not find the decision in *Widson* v. *International Harvester Co.* to be dispositive in the instant case. Although the court in *Widson* did state that the use of the word "tortfeasor" instead of "defendant" implied a

legislative intent that the statutes have an application broader than only those defendants in the main action, the specific question presented to the *Widson* court was whether that broader application encompassed cross-defendants in an action for contribution or indemnity as well. ■ Significantly, the settling party is also referred to as a "tortfeasor," and case law has established that a tortfeasor who settles with the plaintiff before commencement of suit may still be entitled to the protection afforded by section 877.6 *if* a trial court makes a determination that the settlement was in good faith. (See, e.g., *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231 [132 Cal.Rptr. 843]; *The "Good Faith" Settlement, supra,* at pp. 844-846.) ■ It seems axiomatic that in order for a trial court to make a binding judicial determination of good faith, those "tortfeasors" known to have an interest in the outcome of the lawsuit must somehow be brought before the court so that the matter can be fully and fairly litigated.

The obvious vehicle for bringing such interests before the court is a cross-complaint for contribution or partial indemnity by one alleged joint tortfeasor, named as a defendant, against the other joint tortfeasors, whether or not the plaintiff has named those joint tortfeasors as codefendants. In determining that a joint tortfeasor who had settled with the plaintiff *prior to* the commencement of any legal action was entitled to summary judgment on a subsequent cross-complaint, the court in *Stambaugh* v. *Superior Court, supra,* pointed out that not only did the record fail to suggest any evidence of Stambaugh's bad faith, but the defendant who had filed the cross-complaint had failed to affirmatively allege any lack of good faith on Stambaugh's part. The cross-complaint was subject to summary adjudication not because the trial court determined Stambaugh had settled in good faith; the trial court had never been asked to consider this issue. The cross-complaint was fatally flawed because it rested on the erroneous premise that Stambaugh, as a joint tortfeasor, was an indispensable party in the plaintiff's action for damages rather than alleging that Stambaugh should not be shielded from contribution to his joint tortfeasors because his settlement was not in good faith.

Significantly, *Stambaugh* v. *Superior Court* was decided before section 877.6 was enacted and thus preceded the specifically described statutory procedure by which a party may challenge the good faith of a settlement. In contrast to the facts of *Stambaugh,* in the instant case Singer had filed a cross-complaint for, inter alia, contribution and partial indemnity against Cool-Temp, and Cool-Temp had moved for dismissal or judgment on the pleadings, asserting its previously adjudicated good faith settlement with plaintiffs. Singer opposed the motion and called into question the good faith of Cool-Temp's settlement, thus placing the issue squarely before respondent court. Since Singer was not a party to the proceeding, either as a

defendant or as a cross-defendant, when the trial court first determined Cool-Temp's settlement with plaintiffs was in good faith, Singer had no opportunity to challenge the settlement at that time.

We may safely assume that a plaintiff and a settling tortfeasor are primarily interested in obtaining judicial approval of their agreement and cannot realistically be expected to argue *against* this interest. However, when a party challenges the good faith of a settlement pursuant to section 877.6, obviously such a party is not only a stranger to the settlement but has an understandable interest in establishing the lack of good faith in the settling parties, thus preserving the challenger's right to contribution or partial indemnity. Cool-Temp does not argue that its settlement with plaintiff was impervious to challenge at the time the trial court found the settlement in good faith, but the record shows the Silvas were the only parties who had an apparent interest in asserting the lack of good faith. They made no such assertion; it is conceivable they had no real interest in doing so because one of the children who died in the fire was their grandchild.

Although the court in *Widson* v. *International Harvester Co.*, *supra*, 153 Cal.App.3d at pages 57-58, did not address what we deem the fundamental issue in this case, it did adopt language consistent with a broad application of section 877.6 and inconsistent with a conclusion that subdivision (c) was not intended by the Legislature to accomplish precisely what it provides— to bar *any other joint tortfeasor* from any further claims against the settling tortfeasor. Subdivision (a) is facially consistent with the interpretation Singer urges, but it is just as consistent with a legislative intent to empower any party to apply for and obtain a good faith determination that will accomplish the bar to further claims specified in subdivision (c). To construe section 877.6 to provide under all circumstances for a separate determination of the good faith of a settlement each time an additional party is named or served is inconsistent with the Legislature's objective to promote settlement of litigation.

Moreover, section 877.6 was enacted to implement section 877, and section 877 uses language consistent with a legislative intent that the settling tortfeasor's discharge encompasses claims of all other joint tortfeasors whether or not named as parties. The express scope of section 877 extends to various types of settlements given in good faith to "one or more of a number of tortfeasors *claimed to be liable for the same tort.*" (Italics added.) Reference in subdivision (a) (which *statutorily* abrogates the common law principle that discharge of one tortfeasor discharges all) to "any other *such* tortfeasor" (italics added) necessarily relates back to those tortfeasors claimed to be liable. However, subdivision (b) of section 877 provides that the settlement "shall discharge the tortfeasor to whom it is given

from all liability for any contribution to any other tortfeasors"; absence of the referent "such" leads us to conclude that the legislative intent in enacting section 877.6 was to make a good faith determination pursuant to subdivision (a) of that statute a bar to any further claims against the settling tortfeasor.

 Singer's alternative contention is that if sections 877 and 877.6 are not interpreted to entitle a later-named defendant to a right to be heard on the good faith of the settlement, the statute unconstitutionally deprives Singer of a significant property right without due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 17.) "Both the United States Supreme Court and the California courts have pointed out on numerous occasions that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity. [Citations omitted.]" (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 147 [197 Cal.Rptr. 79, 672 P.2d 862].)

 As our Supreme Court emphasized in *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 541 [96 Cal.Rptr. 709, 488 P.2d 13]: "[A]n individual must be afforded notice and an opportunity for a hearing before he is deprived of a significant property interest, and that exceptions to this principle can only be justified in 'extraordinary circumstances.'" (See also *Escondido Imports, Inc.* v. *Department of Motor Vehicles* (1983) 145 Cal.App.3d 834, 838 [193 Cal.Rptr. 772].) In *River Garden Farms, Inc., supra,* 26 Cal.App.3d at page 996, the court noted: "[c]onstrued in the light of the legislation's objectives, the good faith release clause extends the obligation of good faith beyond the parties to the negotiations, embracing an absent tortfeasor. The latter has a financial stake in the amount of the settlement and thus a justiciable interest in the question of good faith." (See also 12 Cal.Jur.3d, *supra,* at p. 409.)

The financial stake an absent tortfeasor has in the fairness of a settlement between the plaintiff and a joint tortfeasor equates to the deprivation of a property interest, to wit: a nonsettling tortfeasor may be forced to bear a share of the liability greater than that proportionate to his fault when the plaintiff's recovery is reduced only by the monetary amount of a prior settlement. Since a nonsettling tortfeasor loses his right to seek contribution or partial indemnity from a joint tortfeasor who settled *if* that settlement is adjudged to be in good faith, the nonsettling tortfeasor stands to be deprived of his property right to contribution or partial indemnity. When the parties to a settlement know, or reasonably should know, that a nonsettling tortfeasor is exposed to substantial potential liability, such that his joinder as a defendant or cross-defendant is likely, the property right of that nonsettling

tortfeasor must be regarded as significant. For convenience, such a nonsettling tortfeasor will hereafter be designated a *likely defendant.* Thus Singer has a justiciable interest in the determination of good faith in the settlement between plaintiffs and Cool-Temp which respondent court recognized.

Notwithstanding the fundamental due process rights that may be impaired, Cool-Temp argues that important policy considerations dictate that a trial court's determination a settlement is in good faith be binding on all joint tortfeasors whether or not they are parties at the time of the determination and regardless of the knowledge of the settling parties. Specifically, Cool-Temp urges that any other interpretation will have a chilling effect on settlements and thus run counter to the policy favoring settlements and their finality. The validity of Cool-Temp's argument depends upon the kind of settlement under consideration. Certainly, the finality Cool-Temp urges would encourage early, cheap settlements between a single named defendant and the plaintiff. As pointed out in *The "Good Faith" Settlement, supra,* at page 891, an injured plaintiff often has a strong monetary interest in getting some cash up front, whether to underwrite the costs of litigation or to offset the immediate economic loss caused by plaintiff's injury.

On the other hand, it is simply a matter of mathematics that, because the plaintiff's early acceptance of a relatively small settlement from one tortfeasor reduces the plaintiff's actual recovery only by the dollar amount of that settlement (§ 877, subd. (a)), other likely defendants are necessarily faced with the burden of a larger share of the damages claimed than may be warranted by an analysis of comparative fault. Therefore, when such likely defendants are later named, they have a decreasing interest in settlement as their potential liability increases and as the plaintiff must insist on a higher and higher settlement figure to fully compensate for plaintiff's loss. The result is that such later-named defendants are *less* likely to settle since they have little to lose by taking the matter to trial, and the case will remain active in the judicial system. As pointed out in *The "Good Faith" Settlement, supra,* at pages 890-891, section 877.6 has, as a stated purpose, "the easing of court congestion by providing an incentive to settle the *entire* underlying litigation." Thus, the only settlements encouraged by the narrow interpretation of section 877.6 advanced by Cool-Temp are early settlements with a dollar value markedly disproportionate to the potential value of a plaintiff's claim. Settlement of the entire litigation would rarely be furthered by such interpretation, and it is probable that early modest settlements which are facially disproportionate to plaintiff's loss will actually frustrate the legislative intent that the entire litigation be removed from the judicial system. Thus, the interpretation urged by Cool-Temp is not only constitutionally suspect but also furthers none of the goals underlying section 877.6.

As the foregoing discussion makes clear, the interests at stake in a judicial determination that a settlement is in good faith are often in conflict. In attempting to reconcile these interests, we find guidance in analogy to well-settled principles which define necessary parties to litigation. Code of Civil Procedure section 389 states in part that a necessary party is one who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest . . . ." Thus although the doctrine of joint and several liability precludes characterizing a likely defendant as a party necessary to the plaintiff's action, the statutory definition of a necessary party demonstrates that a likely defendant is a party necessary to a binding determination of a good faith settlement. The interplay of section 389 with section 428.10, permitting the filing of a cross-complaint, enables a tortfeasor, seeking the protection of a final judicial determination of good faith, to bring before the court all likely defendants who have an interest in the subject of the action, and particularly in the proposed settlement of the action. Failure to bring into the good faith settlement determination any likely defendant as a necessary party will have the usual effect—the judgment cannot bind the absent party. (See *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 368 [140 Cal.Rptr. 744].)

As we initially acknowledged, this court cannot preclude the filing of a cross-complaint for contribution or partial indemnity against a tortfeasor who has already settled with the plaintiff. In our search for a disposition of such a cross-complaint which takes into consideration the competing interests we have discussed, we emphasize that the *significant property right* of a likely defendant which demands constitutional protection arises from *the possibility of substantial liability.* There may well be circumstances in which a later-joined tortfeasor has such minimal connection to the underlying loss and thus such a limited exposure to liability that his ability to settle will not be impaired by his absence from a good faith hearing pursuant to section 877.6; such a remote tortfeasor need not be deemed a necessary party to the good faith determination.

■ Assuming for this discussion that a settling tortfeasor is named a cross-defendant in a subsequent action for contribution or partial indemnity, how then can the cross-complaint be addressed to maximize the expectations of the parties? The cross-complainant must allege, initially or by amendment, (1) that he is exposed to substantial liability on the plaintiff's claim, (2) that his relationship to the subject matter of plaintiff's claim was known or reasonably should have been known to the settling parties, and (3) that he is therefore a necessary party who was not given notice of the prior good faith adjudication. A settlor who objects to the cross-complaint need only

move to dismiss on the basis of the prior good faith determination; the cross-complainant must then prove to the satisfaction of the court his status as a necessary party, i.e., a likely defendant, at the time of settlement or face a judgment of dismissal.

Moreover, even if a cross-complainant overcomes this initial hurdle, he must still bear the burden of proving at a duly noticed hearing pursuant to section 877.6 that the prior settlement was not in good faith and thus he is not bound by the good faith determination but may pursue his cross-complaint for contribution and partial indemnity. Section 877.6, subdivision (d) expressly places the burden of proof on the party asserting the absence of good faith.

Several ends are accomplished by this procedure. First, the constitutionality of section 877.6 is not in question since the statute is not construed to deprive a likely defendant of a significant property interest without notice and the opportunity to be heard. Second, the settling tortfeasor obtains the final bar against claims for contribution or partial indemnity contemplated by section 877.6, subdivision (c), so far as the bar can be made final, subject only to the limited burden the settlor must undertake to respond to a subsequent cross-complaint. Since the burden remains on the cross-complainant to prove his status as a likely defendant and thus necessary party to the good faith determination, the settlor's initial burden of response would probably encompass little more than the appropriate motion supported by a declaration that notice of the hearing on the good faith of the settlement was given to all likely defendants. Finally, insofar as our holding compels the parties to a settlement to ensure that all likely defendants have an opportunity to be heard on the good faith of the settlement, the trial court will be aided in its evaluation of good faith and the fundamental legislative goal that encourages the total settlement of litigation will be furthered.

Cool-Temp's argument that the goal of settlement will be frustrated if a good faith adjudication is not binding on all later-named defendants, regardless of their absence from the litigation at the time of the good faith adjudication, has lost much of its viability with the Supreme Court's decision in *Tech-Bilt* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488. Certainly a defendant's interest in sharing liability by cross-complaining against other potential joint tortfeasors may sometimes conflict with the first named defendant's interest in making a quick settlement for a minimal amount, especially when other joint tortfeasors have not yet been brought into the litigation and thus will not be participants at a section 877.6 hearing. Since a trial court's determination of the good faith of a settlement must now encompass, among other factors, some inquiry into proportionality of fault, a settling defendant who seeks a determination of good faith

in order to remove himself entirely from the litigation has nothing to lose and everything to gain, i.e., finality of the settlement, by cross-complaining against all possible joint tortfeasors whether or not they have been named by the plaintiff.

A settling defendant, believing his settlement offer fairly approximates his proportional share of liability, has nothing to fear from his joint tortfeasors. The Supreme Court in *Tech-Bilt* made clear that the goal of equitable sharing at settlement is not a requirement of equal sharing but must be gauged by an approximation of the numerous imponderables that enter into an agreement prior to a full adjudication of fault. Thus, our holding that a good faith determination under section 877.6 does not bind a likely defendant who was not a party to the action when the determination was made and had no chance to contest it will have little, if any, negative effect on early, partial settlements, since these settlements must now be "in the ballpark." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 499-500.)

■ We are not persuaded by Cool-Temp's contention that Singer's rights as a later-named defendant can be fully protected by permitting Singer an equitable attack on a final judgment entered in the litigation. Such a procedure would permit Singer to attack the collusive or fraudulent aspects of the early Cool-Temp/plaintiff settlement. However, Cool-Temp's argument ignores not only the obvious fact that this solution in no way furthers the express legislative purpose of total settlement which ends litigation, but it also burdens a likely defendant unnamed at the time of an early "good faith" settlement with the expense of continuing the litigation to judgment before he can mount an equitable challenge. Beyond this obvious economic prejudice, the inherent lapse of time in Cool-Temp's proposed solution could easily inhibit, if not destroy, the later-named defendant's ability to prove collusion in the earlier settlement between plaintiff and a joint tortfeasor.

■ As we have observed, Singer was afforded a hearing on the issue of Cool-Temp's good faith settlement with the plaintiffs after Singer became a party to the litigation. Respondent court made clear that it believed a second good faith hearing was mandated by the principles of due process. The result in this case is therefore consistent with the procedure we have already discussed, i.e., evidence before respondent court established both that Singer had a connection to the fire which was known to the settling parties and that Singer faced substantial liability for plaintiffs' loss, thus rendering Singer a likely defendant and necessary party to any hearing on the good faith of Cool-Temp's settlement with plaintiffs. Singer then bore the burden of proving the lack of good faith in that settlement. ■ Cool-

Temp correctly points out that respondent court's determination following this hearing, i.e., Cool-Temp's settlement with plaintiffs was in good faith, cannot be reversed by this court absent a determination that respondent court abused its discretion. "Good or bad faith is a question of fact in each case. [Citation omitted.] Only a trial court may reach a decision, guided by the evidentiary material presented to it." (*River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d at p. 998.)

■ Singer contends respondent court abused its discretion by limiting the scope of the hearing afforded to Singer. Singer attempted to have the hearing continued until after it had had a hearing on its motion to compel discovery from Cool-Temp. Singer points out that the discovery propounded was directed to the various factors set forth by the Supreme Court in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488. ■ These included "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Id.,* at p. 499.)

■ Having concluded that fundamental constitutional principles of due process require that a likely defendant, who was a stranger to the litigation at the time a determination of good faith was rendered, be afforded a new hearing on this issue, it requires little discussion to find a concurrent right in such a later-named defendant to engage in discovery against the settling defendant to elicit evidence relevant to the *Tech-Bilt* factors. Cool-Temp contends such discovery is not required since the good faith of a settlement is assessed by evidence *available* at the time of the settlement. (*Tech-Bilt, Inc.* v. *Woodward Clyde & Associates, supra,* at p. 499; *Torres* v. *Union Pacific R.R. Co., supra,* 157 Cal.App.3d at p. 509.) Thus, Cool-Temp points out that the January 31, 1984, deposition of the fire expert retained by the Silvas, which suggested no liability on Cool-Temp's part, was properly considered by respondent court since the 1984 deposition was before the settlement. However, Cool-Temp argues that evidence arising from the same expert's later deposition taken by Singer, which was inculpatory, rather than exculpatory, with respect to Cool-Temp, was inadmissible since it was obtained after the settlement.

The weakness in this argument is Cool-Temp's equation of the word "available" with the concept of "actually produced or in existence." However, using as an example the factor of proportionate liability, the court in

*Fisher* v. *Superior Court, supra,* 103 Cal.App.3d 434, 443-444, pointed out that "the only thing *relevant* to making a determination of the good faith of the settlor regarding the liability of the tortfeasors to the plaintiff is what was, *or should have been* [italics added], known to the settlor *at the time the questioned settlement is made.* What is brought out about the underlying liability picture during subsequent discovery or trial after that settlement is not relevant to the 'good faith' settlement issue because it could not have been a matter affecting the 'good faith' of the settlor *at the time of the settlement.*" (Italics in original except where noted.) Thus the hallmark of evidence *available* at the time of settlement is not only what the settling parties actually contemplated or actually presented to the court in seeking a good faith determination; available evidence also encompasses what the parties should have known. While it may not be in a settling party's best interest to develop and to present evidence which enlarges his potential liability, such evidence is available if a party later contesting the good faith of a settlement could have obtained it through investigation or discovery prior to or at the time of settlement. On the other hand, evidence which could not reasonably have been produced by a joint tortfeasor with an interest in producing all relevant evidence is not available; such evidence may not be considered in assessing the good faith of a settlement.

As a joint tortfeasor Singer conceivably has the most vigorous interest in pursuing discovery against Cool-Temp to establish Cool-Temp's actual approximate liability. Thus the fact that Singer was not a party to the litigation at the time of the earlier deposition means Singer did not have the opportunity at that time to question the expert as it later did and to elicit evidence of Cool-Temp's liability. Such a limitation renders Singer's opportunity to be heard in a later good faith hearing relatively meaningless. Decisional law has discussed only that evidence *available* at the time of settlement; if Singer can show that the expert's testimony was available, although not elicited by plaintiffs or by Cool-Temp, at the time of the earlier deposition, the later deposition should properly enter into the trial court's consideration. Any other result would reward a settling defendant/tortfeasor for successfully withholding or concealing evidence at the time of the settlement in derogation of its duty to act fairly and in good faith to joint tortfeasors as well as to plaintiff. (*River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d at p. 996.)

Since the cross-complainant bears the burden of proof on the absence of good faith, we believe the burden placed on a settlor to respond to the limited discovery here discussed is slight. In light of the *Tech-Bilt* criteria, a determination that the challenged settlement was in good faith, i.e., (1) was proportional, (2) took into consideration the financial condition and insurance policy limits of the settling tortfeasor, and (3) did not evidence

tortious conduct toward nonsettling tortfeasors, will stand despite subsequent challenge with a minimum of response to discovery by the settlor. Moreover, since discovery directed to these factors would be required only *after* it had been determined that the tortfeasor challenging the good faith of the settlement was a likely defendant and necessary party to the good faith adjudication, any burden falling on the settlor is outweighed by the settlor's failure to join the challenging tortfeasor prior to the good faith determination.

We therefore conclude that the abuse of discretion here involved was not respondent court's finding of good faith based on the evidence before it, but rather its refusal to postpone the hearing on the good faith of Cool-Temp's settlement with plaintiffs until such time as Singer could complete pertinent discovery directed to those factors enumerated in *Tech-Bilt, Inc.*, *supra*, 38 Cal.3d 488.

 That the *Tech-Bilt* analysis is applicable to the instant proceeding despite the fact that the decision was rendered after Cool-Temp's settlement with plaintiffs is readily apparent. In *Tech-Bilt, Inc., supra*, 38 Cal.3d 488, the Supreme Court merely defined the term "good faith"; it added nothing to this fundamental requirement that had not existed at the time of Cool-Temp's settlement. Although the Supreme Court in *Tech-Bilt* disapproved this court's decision in *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798 [173 Cal.Rptr. 38], and its progeny, including *Cardio Systems, Inc.* v. *Superior Court* (1981) 122 Cal.App.3d 880 [176 Cal.Rptr. 254] and *Burlington Northern R.R. Co.* v. *Superior Court* (1982) 137 Cal.App.3d 942 [187 Cal.Rptr. 376], to the extent those decisions adopted a "nothing short of collusion or tortious conduct" approach to the issue of good faith, Cool-Temp cannot claim any prejudice from future analysis of its settlement under *Tech-Bilt, Inc.*[2]

---

[2]In *Torres* v. *Union Pacific R.R. Co., supra*, 157 Cal.App.3d 499, 507, the court discussed the inappropriateness of the *Cardio* analysis: "This narrow definition is inappropriate for three reasons. First, it destroys the balancing between policy extremes suggested above, making patently unfair settlements impervious to attack by codefendants under section 877. Second, the definition is not supported by the earlier cases dealing with section 877; those cases analogize the good faith requirement to the one owed by insurance carriers to their insureds [citations omitted], and hold that such a duty of good faith is owed by a settling defendant to codefendants [citations omitted]. Third and finally, this definition of good faith cannot be what the Legislature intended. Had the Legislature desired to approve all nontortious settlements, it would merely have required that the settlements be 'lawful'; instead, it required that they be in 'good faith.' Some intent must be accorded to the Legislature's choice of this more rigorous term. . . . [W]e think this term was chosen in order to mediate between the two policies animating the Legislature when it enacted section 877. . . . [W]e find that, by using the term 'good faith,' the Legislature has 'incorporated by reference the general equitable principle of contribution law which frowns on unfair settlements, including those which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit.'" (Fn. omitted; see also *Tech-Bilt, Inc.* v. *Woodward Clyde & Associates, supra*, 38 Cal.3d at p. 495.)

First, the appellate court decision in *Tech-Bilt* (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* ▌(Cal.App.)) relied heavily on this court's opinion in *Cardio, supra,* and the appellate court decision in *Tech-Bilt* had already been accepted for hearing by the Supreme Court when Cool-Temp settled with plaintiff in the instant case. Under these circumstances, the reasonableness of any reliance by Cool-Temp on *Cardio* would be questionable. Moreover, all the Supreme Court did in *Tech-Bilt, Inc.* was *clarify* the definition of good faith; if Cool-Temp's settlement was a reasonable one, i.e., if it was actually made in good faith, a full analysis under *Tech-Bilt* will produce the same result, and Cool-Temp will be entitled to dismissal from the litigation.

▌ We therefore conclude that respondent court's determination that Cool-Temp's settlement with plaintiffs was in good faith was an abuse of discretion because respondent court failed to permit Singer a meaningful opportunity to satisfy its statutory burden of proof. In further proceedings, Singer should be given the right to pursue discovery against Cool-Temp relevant to the *Tech-Bilt* factors to the extent Singer's discovery seeks evidence available, whether or not actually produced, at the time of the settlement.

Let a peremptory writ of mandate issue directing respondent court: (1) to vacate its order of June 18, 1985, finding the settlement between Cool-Temp and plaintiffs in good faith and on that basis dismissing the first, second, fifth, and sixth causes of action in Singer's cross-complaint against Cool-Temp for partial indemnity, contribution, and declaratory relief as to personal injury claims and (2) to allow Singer further discovery as discussed herein before holding any further hearing to determine the good faith of Cool-Temp's settlement with plaintiffs.

Singer shall recover from Cool-Temp its costs (not including attorney fees) incurred in petitioning this court for relief. (*Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672 [40 Cal.Rptr. 621].)

Brown (G. A.), P. J., and Martin, J., concurred.