[Civ. No. 40359. Second Dist., Div. Two. Jan. 4, 1973.]

JAMES S. MIZE, as Public Administrator, etc.,
Plaintiff and Appellant, v.
JOE CRAIL, JR., et al., Defendants and Respondents;
ROSS M. BLAKELY et al., Defendants and Appellants.

## COUNSEL

John D. Maharg, County Counsel, Henry W. Gardett and Douglas C. Miller, Deputy County Counsel, for Plaintiff and Appellant.

Hill, Farrer & Burrill and William McD. Miller for Defendants and Appellants.

Hahn, Cazier, Thornton, Hoegh & Leff, Dennis B. Haase, Julian A. Pollok and Albert J. Forn for Defendants and Respondents.

## OPINION

**THE COURT.**—Joe Crail, Jr., who was the defendant in the court below, has presented two motions in connection with an appeal which is now pending in this court.

In these motions he seeks dismissal of the appeal filed by the Public Administrator of Los Angeles County who is special administrator of the estate of Joe Crail, Sr., deceased. In the other motion he seeks dismissal of part of an appeal filed by 16 individuals who were designated as defendants and counterclaimants in the court below. The combined effect of these motions, if successful, would foreclose any review of a critical portion of the judgment rendered in the trial court.

Because of the unique and somewhat complex circumstances of this case, a detailed recital of the factual background is necessary to aid understanding of these motions.

Joe Crail, Sr., died on December 4, 1969. Mr. Crail was co-founder of Coast and Southern Federal Savings and Loan Association and at the time of his death he controlled that institution. A holographic will, executed by him on January 10, 1967, was filed with the Los Angeles County Clerk on December 5, 1969. That will disposed of the estate of Mr. Crail primarily to non-relatives. As a consequence his children filed a contest on December 16, 1969. That action is still pending.

On December 17, 1969, the Public Administrator of the County of Los Angeles, in the person of Baldo Kristovich, the then incumbent of that office, was appointed special administrator of the estate.

Shortly thereafter, on January 13, 1970, Joe Crail, Jr., notified the public administrator that he had on the previous day discovered a quantity of stocks and bonds in a secret compartment in the house of his father and that these securities had been the subject of a gift *causa mortis* to him from his father.

The public administrator caused an action to be filed on January 26, 1970, for the purpose of determining the ownership of the above mentioned securities. Named as defendants in the action were Joe Crail, Jr., and a number of Does. The 16 individuals who, in addition to the public administrator, are the appellants in the case were served and answered. They also filed counterclaims to the securities, such counterclaims being based on stock purchase agreements previously entered into between themselves and Mr. Crail, Sr.

These 16 individuals' names appeared as issuees of certain of the stock certificates and six of them (Blakely, Brown, Gossage, Martin, High and Powers) were also named as legatees and executors in the holographic will.

The trial was bifurcated into Phase I dealing with the validity of the gift *causa mortis* and Phase II dealing with the validity of the stock purchase agreements.

A single set of findings and conclusions and a single judgment was rendered on March 22, 1971, by which Joe Crail, Jr., was adjudged to be the owner of the securities. The stock purchase agreements were adjudged to be invalid.

Two notices of appeal were filed, one on behalf of the public administrator and one on behalf of the 16 defendants and counterclaimants.

The notice of appeal filed on behalf of the public administrator was filed April 6, 1971. A notice to prepare reporter's transcript and clerk's transcript was filed on April 16, 1971.

Respondent Crail, Jr., subsequently moved the trial court to strike the notice of appeal and designation of the record on appeal, which motion after a hearing was granted on May 17, 1971. The basis for such order purported to be the fact that Mr. Kristovich had not authorized the filing of the notice of appeal.

On September 2, 1971, for reasons not germane to this motion, Mr. Kristovich was removed from office and a Mr. Mize was duly appointed as his successor by the board of supervisors. On November 22, 1971, Mr. Mize was directed by the judge of the probate court to prosecute the appeal and on August 23, 1972, this court by mandate directed the superior court to vacate its previous order striking the notice of appeal.

### RESPONDENT'S CONTENTIONS

By these two dovetailing motions, Joe Crail, Jr., seeks to dismiss the appeal of the public administrator on the grounds that the notice of appeal was filed without Kristovich's approval and to limit the appeal of the 16 other appellants to Phase II of the judgment, i.e., the validity of the stock purchase agreements on the grounds that these persons are not "aggrieved" by the Phase I of the judgment.

Since the appeal of the public administrator as representative of the estate is primarily concerned with the gift *causa mortis*, dismissal of that appeal coupled with the sought-for limitation of the other appeal would result in the judgment as to that gift becoming final without appellate scrutiny. Thus the result of these motions is of considerable importance not only to this particular action but to other related actions as well.[1]

### THE PUBLIC ADMINISTRATOR'S APPEAL

The notice of appeal filed on behalf of the public administrator was signed by the County Counsel of the County of Los Angeles.

Rule 1, California Rules on Appeal, provides: "The notice shall be signed by the appellant *or by his attorney.* . . ." (Italics added.) The county counsel was attorney of record in the court below and his authority to represent the public administrator is not open to question.[2]

---

[1]There is still pending in connection with this matter (1) the will contest; (2) an action to impose a constructive trust on all of the assets of the estate in favor of Joe Crail, Jr., and his sisters (that action is awaiting the determination of the California Supreme Court); and (3) an appeal from the order of the Probate Court directing Mize to prosecute an appeal.

[2]Section 21 of the Charter of the County of Los Angeles provides: "The County Counsel shall represent and advise the Board of Supervisors and all County, town-

On its face the notice is timely and in such form as to confer jurisdiction on the Court of Appeal. The issue as to its validity stems from the fact that on April 7, 1971, the day following the filing of the notice of appeal, Chief Deputy Public Administrator Harry Koulos directed a letter to the county counsel requesting a dismissal of the notice of appeal for the reason that Mr. Kristovich "has decided not to appeal this matter." At a later hearing on the matter, Mr. Kristovich testified that his decision not to appeal was based on his own evaluation that the chances of success were minimal. There is no evidence in the record, however, that he communicated his wishes to the county counsel prior to the filing of the notice of appeal.

On the contrary, the county counsel in his declaration filed in connection with this motion states that his letter recommending an appeal had been delivered to Mr. Kristovich on March 25, 1971, and he had received no response until after the notice had been filed. Furthermore, according to the county counsel, it was normal procedure for the various county department heads to abide by the determination of the county counsel in legal matters affecting the activities of the county government.

Government Code section 25303 provides as follows: "The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly those charged with the assessing, collecting, safekeeping, management, or disbursement of the public revenues. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection."

Pursuant to this statutory grant of authority the Board of Supervisors of Los Angeles County on January 26, 1971, unanimously adopted a resolution as follows: "In accordance with the provisions of Section 21 of the County Charter, it was declared as a policy of the Board that the Public Administrator-Public Guardian, whether acting as Administrator, Guardian, Conservator, or in any other capacity, be exclusively represented by the County Counsel except in those instances wherein the County Counsel concurs in other representation or where the County Counsel, where he

---

ship and school district officers, in all matters and questions of law pertaining to their duties, and shall have exclusive charge and control of all civil actions and proceedings in which the County, or any officer thereof, is concerned or is a party. He shall also act as attorney for the Public Administrator in the matter of all estates in which such office is executor, administrator with the will annexed, or administrator, and the County Counsel shall, in every such matter, collect the attorney's fees allowed therein by law and pay the same into the County Treasury."

deems it appropriate, secures the consent of the Board. The Public Administrator-Public Guardian shall comply with this policy and accordingly was directed to not employ, retain or petition a court to authorize him to employ or retain counsel other than the County Counsel except in accordance with this order. The Public Administrator-Public Guardian was directed to recognize and give full credence to the legal advices and counsel of the Office of the County Counsel and to recognize as provided in said Section 21, that office's 'exclusive charge and control of all civil actions.' "

Respondent relies heavily on *Guardianship of Gilman,* 23 Cal.2d 862 [147 P.2d 530], which states at 864: "[W]here the attorney was not authorized by the [party] to notice an appeal he may not do so in his individual capacity." That case is distinguishable.

The action of the county counsel was not that of an intermeddler or a stranger to the action and we are of the opinion that under the circumstances he was authorized to file the notice of appeal.

Mr. Kristovich was not in the position of an individual private litigant. As a county officer he was performing a governmental function as agent of the county government. (Gov. Code, § 24000; *County of Los Angeles* v. *Kellogg,* 146 Cal. 590 [80 P. 861]; *Estate of Miller,* 5 Cal.2d 588 [55 P.2d 491].) As such he owed the highest fidelity not only to the estate but to the county who might suffer liability from any tortious conduct on his part in dealing with the estate. Further, he had no authority to discharge the county counsel.

The county counsel who was also an agent of the same public entity and its exclusive legal representative had a right to proceed on behalf of the office of the public administrator. A significant public interest was at stake, which interest transcended that of Kristovich as an individual.

An attorney's authority to act on behalf of his client in matters relating to the conduct of litigation is broad enough to cover the filing of a notice of appeal. Such an act is in the advancement of his client's interests and serves the accomplishment of the purpose for which he was employed.

As the court stated in *Davey* v. *Mulroy,* 7 Cal.App. 1, at page 6 [93 P. 297], "We can conceive of no more appropriate steps which could be taken by an administrator to 'protect and preserve' the property of the estate . . . than by prosecuting an appeal from a judgment or order involving the property rights of the estate which he may be advised has been erroneously entered against the [estate]."

In *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, at page 283 [132 P.2d

600], the court declared that an attorney has ". . . complete charge and supervision of the procedure to be adopted, the conduct of the trial and all cognate subjects, provided only that the attorney does not impair, compromise or destroy his client's cause of action or subject matter of the litigation without his client's consent . . . ." (See also *Redsted* v. *Weiss,* 71 Cal.App.2d 660 [163 P.2d 105].)

 The notice of appeal was properly filed.

Furthermore, by virtue of the county charter, the county counsel was in "exclusive charge and control" of the litigation, and the actions of the county counsel have been ratified by the incumbent public administrator as well as the probate court from which the authority of the special administrator was derived.

### THE APPEAL OF THE INDIVIDUAL CLAIMANTS

 The 16 individuals who appeared as defendants and cross-complainants noticed an appeal from the whole of the judgment. In this motion respondent contends that since the issue of the validity of the gift *causa mortis* (Phase I) was essentially a dispute between the estate and respondent, these appellants have no standing to attack that portion of the judgment in his favor. He asks us to thus limit the issues on appeal to Phase II, the stock purchase agreements and strike from appellants' opening brief any reference to Phase I.

An identical motion was directed to this court prior to July 2, 1971. On that latter date in an opinion entitled *Kristovich* v. *Crail,* 18 Cal.App.3d 589, at page 591 [96 Cal.Rptr. 207], that motion was denied. The court considered the issue to be prematurely raised and stated: "We do not believe, however, that it would be in the interest of the administration of appellate justice in California to inaugurate a kind of appellate pretrial in which the scope of review is determined before the record is even filed or the contentions on appeal are limited before they have been voiced. We do not, in this opinion, declare that the kind of relief which respondent seeks is never available on motion. For example, situations may arise where the preparation of a record, doomed to be irrelevant to any arguable appellate issue, creates such a hardship upon some or all of the parties, that prophylactic intervention is necessary. No facts of such a nature are claimed to exist in the case at bar. Respondent merely desires an early determination that the merits of his legal ownership of the securities are not debatable on the pending appeal."

Respondent's view of that opinion is too narrow when he argues that

it was based on the fact that the record had not yet been filed with the court. He now says the record is before us and that it is plain to see that the appellants are not aggrieved by the judgment in Phase I and thus are not within the ambit of Code of Civil Procedure section 902.

The holding in *Kristovich, supra,* was not so limited nor is the resolution of the issue that patent. Respondent has failed to show any hardship requiring "prophylactic intervention." In fact, he concedes in his motion that the record designated by the appellants and which is already before this court is that of the entire proceeding.

It thus appears that he is again simply seeking "an early determination that the merits of his legal ownership of the securities are not debatable on the pending appeal."

Suffice to say the appellants were parties to the entire proceedings below and the judgment is singular in nature.

██ "[A]ny person having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment, is a party aggrieved and entitled to be heard on appeal." (*Estate of Colton,* 164 Cal. 1, 5 [127 P. 643]; see also *Leoke* v. *County of San Bernardino,* 249 Cal.App.2d 767 [57 Cal.Rptr. 770].)

██ In opposition to this motion appellants argue that they have an immediate and substantial interest in ensuring that the securities remain in the estate of Joe Crail, Sr., the successor in interest to Mr. Crail as seller and pledgee of the securities. They assert that if the decision in Phase I of the trial is allowed to go uncontested on appeal, and thus become final, the securities will be removed from the estate of Joe Crail, Sr., and the appellants will be left without an adequate remedy should their contracts be held valid. They further allege that specific performance of the contracts is their only adequate remedy and that while that remedy may lie against the estate it may not lie against respondent who is a stranger to those contracts.

Without deciding the ultimate merits of their contentions we conclude that they are arguably meritorious to the extent that appellants should not be summarily foreclosed from being heard on appeal. Stated another way, we cannot say as a matter of law that appellants are not aggrieved by both phases of the judgment.

The motions are denied.

A petition for a rehearing was denied January 31, 1973.