[No. D001838. Fourth Dist., Div. One. July 25, 1986.]

WENDY RANKIN, Plaintiff and Respondent, v.
JONI CURTIS, Defendant and Appellant.

**COUNSEL**

David E. Stumbos, Thomas E. Miller and Miller & Gibbs for Defendant and Appellant.

Brian D. Monaghan, Goebel & Monaghan, Michael M. Anello, Alan K. Brubaker, Wingert, Grebing, Anello & Chapin and Stephen R. Mulligan for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Communication among lawyers is frequently expedited by the use of a few legal "buzz words" which attempt to describe a complex concept in an abbreviated fashion. Unfortunately, brevity sometimes results in a loss of clarity as to what is meant by the commonly used term. We have that problem here where we deal with the notion of "good faith" in the context of multiparty tort litigation. In this writ proceeding[1] we consider the relationship between a "good faith" settlement under Code of Civil Procedure section 877.6[2] (see generally *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]) and the insurer's obligation to act in "good faith" toward its insured established in cases such as *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883] and *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]. More particularly, we must decide whether a settlement is in "good faith" even though the insurer for one of the settling defendants arguably breached its "good faith" obligations

---

[1]In the interests of fairness and future consistency, we have elected to treat Curtis's purported appeal as a petition for writ of mandate. (See Code Civ. Proc., § 877.6, subd. (e), effective Jan. 1, 1985; *Barth-Wittmore Insurance* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 130-131 [214 Cal.Rptr. 894].) In doing so we do not necessarily reject Curtis's contention that our earlier denial of defendants' motion to dismiss her appeal is law of the case on the question of the appealability of the confirmation order. (See *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 230-231 [28 Cal.Rptr. 865, 379 P.2d 321].) But even if that doctrine were inapplicable given the qualified nature of our denial order (see *id.* at pp. 231-232), the question here is not our jurisdiction to consider the issues presented by the case but instead merely the label under which they will be considered.

[2]All statutory references are to the Code of Civil Procedure.

by denying coverage and refusing to negotiate on behalf of one of the nonsettling defendants. Although these two "good faith" concepts bear similar labels and arguably encompass analogous principles, they are in reality separate and distinct legal ideas. We conclude that an insurer's bad faith toward one of its insureds does not automatically or necessarily establish that the settlement on behalf of other insureds was not in good faith. The settlement in this case, however, preceded the Supreme Court's *Tech-Bilt* decision. Joni Curtis, the nonsettling defendant here, should have the opportunity to present evidence consistent with *Tech-Bilt*'s analysis aimed at demonstrating that the proposed settlement with the plaintiff, as opposed to the insurer's conduct toward her, was in bad faith. Accordingly, we issue a writ directing the superior court to allow further discovery and conduct a *Tech-Bilt* hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In August 1980, 15-year-old Wendy Rankin (Wendy) sustained serious physical injuries while running an obstacle course at a church camp. She was rendered a quadriplegic as a result of the accident.

Wendy filed a personal injury complaint against a host of defendants including the First Baptist Church of Del Cerro, which was insured by Preferred Risk Mutual Insurance Companies.[3] Also included as a defendant was Joni Curtis, a Baptist church member and camp counselor who allegedly administered first aid to Wendy immediately after the accident. The complaint alleges she was an "agent and employee" of the First Baptist Church at the camp. Notwithstanding this allegation, Preferred Risk took the position that Curtis was not an employee of the Church and therefore did not qualify as an "additional insured" under a provision in the Church's liability policy including for coverage purposes "employees." As a result, Preferred Risk made no attempt to represent Curtis's interests in the settlement negotiations.

After extensive negotiations between most of the defendants, their insurers and Wendy, assisted by retired Superior Court Judge William Yale, a settlement agreement was reached in February 1984. Curtis had not been served with the complaint, was not notified and did not participate personally or

---

[3]Preferred Risk also assumed the defense of several other defendants in the lawsuit including the San Diego Southern Baptist Association, The Southern Baptist General Convention of California, and church pastors Phil Nall and Sam Williams. For sake of convenience we refer to all defendants whose defense Preferred Risk assumed as the "Preferred Risk defendants." The Preferred Risk defendants are the only parties responding to Curtis's appeal/writ petition.

through a representative in these negotiations.[4] The settlement agreement provided for a settlement package of $1.45 million. The Preferred Risk defendants contributed $500,000, the policy limits on the applicable Preferred Risk policy. The additional participating defendants also made policy limit contributions. Pursuant to the agreement an annuity providing Wendy with monthly payments of $6,368 per month for life was to be purchased.

A provision in the settlement agreement indicates that the parties recognized the potential that Curtis might be deemed an "employee" of the church and therefore covered as an "additional insured" under the Preferred Risk policy. That provision requires Wendy to indemnify Preferred Risk for any amounts recovered by other persons against Preferred Risk to the extent Wendy recovered any amounts from persons other than the parties to the settlement.[5] Thus, if Wendy obtains a judgment against Curtis and Curtis in turn recovers the amount of that judgment from Preferred Risk as part of her damages in a bad faith action against it, the settlement agreement requires Wendy to transfer to Preferred Risk any amount paid to her by Curtis. While the language of the provision is complex and the number of factual and legal scenarios numerous, the provision appears to complete a circular transaction in which sums of money may change hands but the net effect is a wash. Its inclusion in the settlement agreement thus removes any incentive for Wendy to pursue her action against Curtis if it is determined in a separate declaratory relief action that Curtis qualifies as an "additional insured" under the Preferred Risk policy.[6]

On March 9, 1984, the settling defendants filed a motion to confirm that the settlement agreement was in good faith. Curtis was served with notice

---

[4]Also not participating in the settlement were defendants John Lopresti and Gay Nall. The record reflects that representatives of these defendants were served with the motion papers but they made no appearance at the confirmation hearing to contest the good faith of the settlement.

[5]The provision, signed by Wendy, reads as follows: "FOR AND IN FURTHER CONSIDERATION OF THE PAYMENTS CALLED FOR HEREIN, specifically the payment by 'Preferred Risk' of policy limits on behalf of their insureds. . . I do . . . agree to fully indemnify 'Preferred Risk' and to hold any monies recovered from other persons, organizations, associations or corporations and their respective insurance carriers not parties to this settlement agreement, as a result of judgment or settlement, with or without further litigation, in trust for 'Preferred Risk' to be paid to 'Preferred Risk' in the event of recovery in a subsequent action or actions by other persons, organizations, associations or corporations and their respective insurance carriers, against 'Preferred Risk.' This special indemnification and trust agreement is made and based on Preferred Risk's commitment to actively and vigorously defend such subsequent action or actions."

[6]Following the approval of the settlement, Preferred Risk filed such a declaratory relief action against Curtis seeking a judicial determination of the coverage issue. (See San Diego Super. Ct. case No. 528745, filed Oct. 3, 1984.) Apparently the case has not progressed beyond the filing of a first amended complaint.

of the motion to confirm sometime before March 13 but the record is unclear as to the precise date. It is clear, however, that Curtis's insurer on a homeowners policy—United Pacific Reliance Insurance—was served with notice on March 9. United Pacific was first contacted about the claims against Curtis on February 8, 1984, by Wendy's attorney, at which time a very general discussion was held but no demands were made. On March 14, 1984, Wendy's attorney made a demand to United Pacific for the policy limits of the homeowners policy issued to Curtis.

United Pacific then retained Attorney Robert Gallagher to represent Curtis's interest in the settlement agreement. Gallagher first received the file in the matter on March 26, 1984—three days before the scheduled hearing. On March 29, 1984, United Pacific recognized the possibility of potential conflict in having its attorney, Gallagher, represent Curtis, so independent counsel, David Stumbos, was retained for Curtis two hours before the hearing.

Attorneys Daniel Shinoff (from Gallagher's law office) and Stumbos were present at the hearing and each informed the court he was making a special appearance for Curtis. Gallagher's declaration, filed on the date of the hearing, stated his lack of knowledge of or preparation for the settlement "good faith" hearing and requested either a denial of the motion or that the court "defer the resolution in this matter for at least 90 days in order to afford my client the opportunity to make a demand upon other insurance carriers in this matter for defense and indemnification and to provide an adequate opportunity to review the facts . . . and meaningfully participate in the resolution of this case."

Because of the proposed settlement's potential effect on Curtis's indemnity rights against the settling defendants, the trial court allowed Shinoff and Stumbos to argue.[7] It proceeded to find that service of the motion papers on Curtis had been timely and denied Curtis's request for a continuance. It then stated it could not find the settlement had been made in bad faith[8] and granted the motion.

## DISCUSSION

■ Curtis's primary contention is that the trial court erred in finding the settlement was made in good faith.[9] She argues that Preferred Risk's

---

[7]We are unaware of the substance of the argument, however, because it was unreported.

[8]The terminology used by the trial court is not surprising since subdivision (d) of section 877.6 imposes the burden of proof on the party "asserting the lack of good faith."

[9]Curtis also asserts that she failed to receive adequate (20-day) notice of the confirmation

alleged bad faith in failing to protect her interests during settlement negotiations renders the entire settlement "in bad faith" for the purposes of section 877.6.

■ We have previously recognized that the goals of multiparty tort litigation include maximization of recovery to the injured party, settlement of the injured party's claim and equitable apportionment of liability among concurrent tortfeasors. (*American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 736 [159 Cal.Rptr. 70].) Consistent with these goals, we accept as a general proposition that the Legislature intended the "good faith" concept in section 877.6 to be a flexible principle imposing on reviewing courts the obligation to guard against the numerous ways in which the interests of nonsettling defendants may be unfairly prejudiced. (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 997 [103 Cal.Rptr. 498], quoted with approval in *Tech-Bilt, supra,* 38 Cal.3d at pp. 494-495; see also *id.,* at p. 494, fn. 4.) ■ In applying the concept to any particular claim of unfairness, however, we must keep in mind the singular function of the good faith determination under subdivision (c) of section 877.6. "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the *settling tortfeasor* for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (Italics added.) ■ Thus, a finding of good faith pursuant to section 877.6 in no way affects Curtis's rights as against anyone other than the settling tortfeasors. Specifically, Curtis maintains all her rights as against Preferred Risk which she asserts has breached its duty to deal with her in good faith.

■ The lack of legal relevance which the insurance coverage issue bears to the good faith settlement issue before us should not mask the factual concern we have with the manner in which Curtis has been treated by Preferred Risk.[10] Putting aside issues of coverage, it is troubling to think that having at least recognized a potential coverage issue existed (see *ante,* p. 943), Preferred Risk would not have protected Curtis's interests by at a minimum informing her of the lawsuit and providing independent counsel

hearing as required by section 877.6, subdivision (a). We are inclined to think Curtis waived any objection to the adequacy of the notice because of her counsel's decision to appear at the confirmation hearing and argue the merits of the motion (see *Lacey* v. *Bertone* (1949) 33 Cal.2d 649, 651 [203 P.2d 755]; *Alliance Bank* v. *Murray* (1984) 161 Cal.App.3d 1, 7-8 [207 Cal.Rptr. 233]) but in any event, given our other conclusions, we find it unnecessary to resolve the issue.

[10]Similarly, the record reveals no justification for plaintiff's failure to serve Curtis with the complaint.

before the settlement negotiations began.[11] And to the extent Curtis was deliberately excluded from the settlement discussions, suspicions naturally arise that some party to the settlement may have sought to take advantage of her absence. (Compare *Smith* v. *Mulvaney* (S.D.Cal. 1985) [1984-1985 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,084, considering the fact that settlement negotiations were open to all defendants in finding a settlement to be in good faith under California law.)

Nonetheless, Preferred Risk's possible bad faith in evaluating a coverage issue is irrelevant to the issue of whether the *settling tortfeasors* acted in good faith consistent with *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488. Insofar as Preferred Risk is concerned, Curtis' rights are unaffected by the good faith determination, which only forecloses her rights of indemnity against the settling defendants. If she prevails in the declaratory relief action on the coverage issue, she is entitled to recover in a later bad faith action all damages caused by Preferred Risk's breach of the implied covenant. (See *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796]; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 925 [148 Cal.Rptr. 389, 582 P.2d 980].) The principal element in such damages will be measured by the amount of any judgment Wendy recovers against Curtis less any amounts Curtis would have had to pay had Preferred Risk initially admitted coverage. If Curtis can establish that Wendy would have agreed to release Curtis in exchange for payment of the policy limits, Curtis would be entitled to be indemnified for all sums reasonably paid to Wendy. These sums would presumably include either payments made pursuant to a judgment obtained by Wendy or a reasonable settlement negotiated by Curtis. In addition, Curtis would be entitled to attorneys' fees (see *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783, 798, fn. 15 [118 Cal.Rptr. 837]) and perhaps emotional distress damages (see *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at pp. 433-434).[12]

We also observe that Curtis's argument *assumes* Preferred Risk violated the good faith covenant in denying coverage to her as an employee of the

---

[11]Preferred Risk's declaratory relief action recites that it has now agreed to defend Curtis at Curtis' request subject to a reservation of rights. We see no reason, however, why the insurer's good faith duty does not extend to informing a potential insured of the existence of a lawsuit of which the insurer has knowledge.

[12]Of these three elements of damage Curtis could hypothetically recover, we have already noted that the indemnity clause in the settlement agreement makes it highly unlikely Wendy will pursue her claim against Curtis if Curtis is found to be an additional insured under the Preferred Risk policy. (See *ante,* p. 944.) And since Preferred Risk has agreed to defend Curtis (*ante,* fn. 11), we assume her legal costs in both the declaratory relief action and Wendy's continuing personal injury action are being covered. (See *Brandt* v. *Superior Court, supra,* 37 Cal.3d at p. 818.) This leaves, as the only probable element of recoverable damage, any provable emotional distress suffered as a result of being forced to continue defending the lawsuit.

First Baptist Church. Obviously Curtis must prove that assertion at some point in time. Acceptance of her argument would require that the issue of the insurer's good faith be litigated as part and parcel of the good faith settlement hearing. The impracticality of such a procedure further supports our conclusion that the insurer's good faith is not at issue in that hearing.

If the only claim Curtis could make related to Preferred Risk's bad faith resolution of an insurance coverage issue, we would be inclined to let the trial court's determination of good faith as to the settling defendants stand. Here, however, it is impossible for us to determine whether Curtis's emphasis on Preferred Risk's conduct indicates that the settlement is otherwise unobjectionable or rather is a function of the fact that Curtis had no meaningful opportunity to develop evidence which would demonstrate that the settlement was "so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit." (*River Garden Farms, supra,* 26 Cal.App.3d at p. 997, quoted in *Tech-Bilt, supra,* 38 Cal.3d at p. 495.) As noted earlier this good faith hearing occurred before the Supreme Court filed its *Tech-Bilt* decision and thus the parties may not have been aware of the precise issues on which to focus. Moreover, the timing of the notice (*ante,* fn. 9) and Curtis's lack of knowledge of and participation in the litigation up to the point of the hearing (*ante,* p. 944) made it impossible for her to make a thoughtful and comprehensive presentation of her reasons for opposing the settlement. The attorney for her homeowners insurance carrier received notice of the case only three days before the good faith hearing. When a potential conflict was recognized, another attorney was retained to represent Curtis but he was contacted a mere two hours before the hearing. Not surprisingly in view of the timing, the attorneys representing Curtis and her insurer conducted no discovery in preparation for the hearing. Despite these numerous factors suggesting that Curtis's participation in the hearing would be pro forma at best, the trial court denied her request for a continuance.

█ We recognize that trial courts must be accorded considerable discretion in ruling on motions for a continuance. (See, e.g., *In re Marriage of Johnson* (1982) 134 Cal.App.3d 148, 154 [184 Cal.Rptr. 444].) Such discretion is abused, however, where the lack of a continuance results in the denial of a fair hearing. (See *Cohen* v. *Herbert* (1960) 186 Cal.App.2d 488, 494 [8 Cal.Rptr. 922].) █ We sympathize with the trial judge who was concerned that delaying the hearing might reduce the amount of the annuity which could be purchased for the plaintiff with the settlement proceeds. Such concerns, however, cannot be inflated to the point they emasculate the entire purpose of the good faith hearing.

In considering an analogous situation, one Court of Appeal recently concluded that to the extent a nonsettling defendant has a right to participate

in a good faith hearing, "it requires little discussion to find a concurrent right . . . to engage in discovery against the settling defendant to elicit evidence relevant to the *Tech-Bilt* factors." (*Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 895 [225 Cal.Rptr. 159].) In *Singer,* the trial court denied a nonsettling defendant's request for a continuance of a good faith hearing until such time as the settling defendant responded to discovery relevant to the proportionality of the proposed settlement. (*Id.* at p. 883.) The Court of Appeal concluded that "the abuse of discretion here involved was not respondent court's finding of good faith based on the evidence before it, but rather its refusal to postpone the hearing on the good faith of [the] settlement with plaintiffs until such time as [the nonsettling defendant] could complete pertinent discovery directed to those factors enumerated in *Tech-Bilt, Inc., supra,* 38 Cal.3d 488." (*Id.* at p. 897.)

We likewise believe Curtis must be afforded a reasonable opportunity to challenge the proportionality of the settlement consistent with the Supreme Court's *Tech-Bilt* analysis. As we have explained, however, Preferred Risk's denial of coverage is not the focus of that inquiry. Rather, the ultimate issue to be decided is whether the settlement figure is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825], quoted in *Tech-Bilt, supra,* 38 Cal.3d at p. 499.)

■ ■ ■ ■ Accordingly, a writ will issue directing the superior court to vacate its order finding the settlement in good faith and to allow Curtis reasonable discovery before recalendaring the good faith hearing.[13] The parties shall bear their respective costs in this proceeding.

Work, J., concurred.

---

[13]We wish to stress that our decision should not be construed as expressing any opinion on the adequacy of the settlement. We have issued the writ solely because of the procedural concerns which we have expressed. After discovery and a new good faith hearing, the court, guided by the *Tech-Bilt* criteria, is not precluded from deciding that the settlement here is in good faith. Struggling through this case we too have pondered the question whether section 877.6, subdivision (c), as applied is constitutional as to persons who are not given the opportunity to appear and participate in the good faith hearing. (See *Singer Co.* v. *Superior Court, supra,* 179 Cal.App.3d 875.) That issue, however, was neither briefed nor argued. Moreover, in light of our result which is consistent with *Singer* there is no need to explore the constitutional ramifications of the statute's application. Putting aside constitutional considerations, however, basic fairness requires that every defendant facing potential liability be allowed to participate in settlement negotiations and contest the alleged good faith of any settlement among other defendants.

**STANIFORTH, Acting P. J.,** Dissenting.—I respectfully dissent.

In setting aside the entire order approving the "good faith" settlement, the majority engaged in an act of judicial overkill. They would disapprove of a $1,450,000 settlement—the sum total of all the settling parties' available insurance policy limits. This settlement was reached as the result of lengthy negotiations with the help of a highly skilled, retired, "settlement" judge. It was approved by a trial judge after a hearing that complied insofar as the settling parties are concerned (and the record before this court) with the requirements of *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

Upsetting this settlement (and the underlying agreement which is contingent upon court approval) leaves a quadriplegic young woman without any agreement for settlement, bereft of any legal obligation owing by any tortfeasor to pay her one dime. This would occur after she has received substantial monthly payments under the now-adjudged invalid settlement agreement.

That there was a due process wrong committed against Joni Curtis, the nonserved, non-notified, alleged joint tortfeasor in the good faith hearing, cannot be questioned. Such wrong, however, is not to be righted by the chucking out, without sound basis in fact or law, a settlement which is here sought to be approved by both the plaintiff and the settling defendants. The majority decision would refuse to permit a less than all tortfeasors' settlement because of a procedural due process wrong done to a nonparticipating alleged tortfeasor. This refusal to let less than all settle without the notification or presence of a nonserved defendant—if there is compliance with *Tech-Bilt, Inc.*—would in effect violate both the spirit and letter of Code of Civil Procedure section 877.6.[1]

I

Section 877.6 reads in part: "(a) *Any* party to an action wherein it is alleged that *two or more* parties are joint tortfeasors *shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors,* upon giving notice thereof in the manner provided in Section 1010 and 1011 at least 20 days before the hearing." (Italics added.) This code section does not by its plain and clear language require the parties desiring to settle to invite participation by all potentially responsible tortfeasors to the hearing. Instead, the code section *permits* the notification and thereby the involvement of nonmovant parties. As to such parties as are notified and given the opportunity to appear and participate in the good faith hearing, section 877.6,

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

subdivision (c), directs that a bar be raised to such person from recovery of equitable contribution or indemnity from the settling parties.

A nonparticipating, uninvited, unserved defendant or cross-defendant, however, should not be barred from seeking contribution or indemnity from the settling parties under subdivision (c) of section 877.6. To do so would invite a declaration that sections 877 and 877.6, so construed, are unconstitutional. The appellate court in *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 890-891 [225 Cal.Rptr. 159], held that if sections 877 and 877.6 are "not interpreted to entitle a later-named defendant to a right to be heard on the good faith of the settlement, the statute unconstitutionally deprives [a party] of a significant property right without due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 17.)"

A federal court in *Commercial U. Ins. Co.* v. *Ford Motor Co.* (9th Cir. 1981) 640 F.2d 210, 213, certiorari denied 454 U.S. 858 [70 L.Ed.2d 154, 102 S.Ct. 310], said: "In determining whether the policy of settlement has been furthered, we look to the conduct of the parties. When a plaintiff dismisses an action, the policy is furthered only when the dismissal resulted from a mutual decision to settle the dispute. . . .

*"Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them.* Hence, good faith of the dismissal alone is not sufficient. The dismissal must represent a settlement which is a good faith determination of relative liabilities." Certainly a denial of due process, coupled with potential liability sans right of indemnity against pursuing parties results in an unfair hearing as to Curtis. However, conceding (as do the majority) that there has been a failure of due process[2]—an unfair hearing—as regards Curtis, does this failure require the entire settlement to be destroyed? Certainly not. In the circumstances of this case, such a consequence would be a disaster not only in fact but in law. It would negate any hope of fulfilling the statutory purpose of early settlement by all or as many parties who are willing and desiring to settle on *Tech-Bilt, Inc.* conditions. Rather than destroy the carefully crafted settlement, the appropriate remedy is a simple refusal to bar the

---

[2]Curtis points to the court's failure to grant a continuance in the context of lack of notice, lack of participation, negotiation and lack of opportunity to prepare constituted an abuse of discretion. Under the particular circumstances of this case, it is patent she did not have sufficient time to conduct discovery on the issue of good faith. Thus, she was denied a meaningful opportunity to participate in, to sustain her burden of proving the settlement agreement was not made in good faith at least as to her. (§ 877.6, subd. (d).)

due-process-denied-party from rights of indemnity or contribution if she is pursued to judgment by the settling parties. Such result is compatible with the clear purposes of the settlement statute.

## II

More than just upsetting a "fair settlement," the majority further erred in granting relief to a person not properly before this court. The opinion would set aside an order that does not on its face effect any right or obligation of Curtis. In short, Curtis has no right to seek a writ overturning the order; *she is not an "aggrieved" person.*

It is fundamental law. The right to seek assistance of an appellate court whether by appeal or by writ is dependent upon the person being aggrieved, injuriously affected or prejudiced by the challenged judgment order or decree. *(Estate of Colton* (1912) 164 Cal. 1, 5 [127 P. 643]; *Guardianship of Pankey* (1974) 38 Cal.App.3d 919, 925 [113 Cal.Rptr. 858]; *Mize* v. *Crail* (1973) 29 Cal.App.3d 797, 805 [106 Cal.Rptr. 34]; *Edwards* v. *City of Santa Paula* (1956) 138 Cal.App.2d 375 [292 P.2d 31].)

The record discloses the agreement here approved as a "good faith" settlement did not include Curtis as a party either named, referred to, or as signator. She was not mentioned. This agreement for "effectiveness" is expressly conditioned upon a judicial determination pursuant to section 877.6—that the "settlement is made in good faith." *The agreement by its terms makes neither overt nor covert attempts to effect any rights of Curtis. The document simply ignores her.*

Curtis did not sign the agreement. Nor did she join in the motion to declare the settlement in good faith to dismiss the cross-complaint. *Only the parties signatory to the agreement filed the petition seeking "an order declaring their settlement [with plaintiff] in good faith and dismissing all cross-complaints and barring potential claims for partial indemnity against them . . . ."* For the first time in the points and authorities supporting this request do the attorneys for moving parties declare they *"contemplate prosecution . . . against the remaining, defendants not participating in the settlement proposed including . . .* Joni Curtis." No mention is made of a request to apply the bar of section 877.6, subdivision (c), to Curtis except obliquely in the request "to [dismiss] any *existing and potential* cross-complaints for partial indemnification against these moving defendants participating in the settlement . . . ." (Italics added.)

*The court order that followed did not grant the relief requested.* Instead, paragraph (2) declared "[t]*hat all Cross-Complaints for indemnity or con-*

*tribution against these Defendants, relating to the facts of this case, shall be and are hereby dismissed.*" (Apr. 16, 1986, italics added.)

This order followed upon defense attorney's "Notice of Ruling" (Apr. 10, 1984) which recited that the court "ordered, adjudged and decreed":

"2. That all Cross-Complaints for indemnity or contribution *then pending* against FIRST BAPTIST CHURCH OF DEL CERRO, THE SAN DIEGO SOUTHERN BAPTIST ASSOCIATION, THE SOUTHERN BAPTIST GENERAL CONVENTION OF CALIFORNIA, PHIL NALL, SAM WILLIAMS, THE SOUTHERN BAPTIST CONVENTION, FIRST PRESBYTERIAN CHURCH OF SAN DIEGO, d/b/a RANCHO DEL CIELO, PRESBYTERY OF SAN DIEGO, SYNOD OF SOUTHERN CALIFORNIA AND HAWAII, PRESBYTERIAN CHURCH (U.S.A.) and JIM MENGES relating to the facts of this case, *be dismissed.*

"DATED: APRIL 6, 1984.
"WINGERT, GREBING, ANELLO & CHAPIN

"By: /s/_____
        Alan K. Brubaker . . . ." (Italics added.)

The facts here indicate that on the date this order was made (Apr. 16, 1984), *Curtis had not yet been served with the complaint. She had no cross-complaint on file on that date. Her cross-complaint was in fact filed September 26, 1984.* Thus, the order complained of by Rankin does not on its face affect any right she had for partial indemnity or contribution—if she was later pursued as threatened by the settling defendants. If she is served with process by these defendants (or plaintiff) and if judgment is taken against her, and if she does seek indemnification from the settling defendants, and if a court should then determine she is also *barred* either by an order which does not name her or does not on its face appear by its plain words to bar her claim, or on any other basis, then and only then would she have standing as an "aggrieved party" to complain.

III

Nowhere can it be derived from the plain language of the statutes that an agreement may not be in "good faith" as to one party yet held to be in bad faith as to another. Yet the majority opinion would so interpret the statutes.

In determining whether the entire package here should be rejected or simply that part which has been established to be unfair as to Curtis (if she has standing as an "aggrieved" person), it is necessary to examine the purposes of the tort contribution legislation as embodied in sections 877 and 877.6. They are (1) the amelioration of the punitive effects of the no

contribution rule on joint tortfeasors by providing for "equitable sharing of costs among the parties at fault, and second, encouragement of settlements." (*River Garden Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986, 993, fn. omitted [103 Cal.Rptr. 498].) Neither goal should be applied to defeat the other. Thus, the "good faith provision of section 877 mandates that the court review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." (*Tech-Bilt, supra,* 38 Cal.3d at p. 494, fn. omitted.) And since the finding of good faith discharges a settling tortfeasor from any claim for partial or comparative indemnity by a joint tortfeasor (§ 877.6, subd. (c)), the Supreme Court has declared this bar should apply only when the dual roles of the statute have been furthered. (*Tech-Bilt, supra,* 38 Cal.3d at p. 496.)

Under the facts and circumstances of this case, the settlement amounts reached as among the settling defendants and the plaintiff may well be within the reasonable range as to them and should, absent evidence to the contrary, be approved as a good faith settlement. However, as to Joni Curtis, the settlement fails the good faith test. She was not given the opportunity to participate. Thus, the benefits of section 877.6, subdivision (c) should not be extended to the settling defendants to bar Curtis even if she is in fact barred by the trial court order.

## IV

Finally, if it be assumed arguendo Curtis has cause ("standing") to complain about the substance of a settlement made, this further question arises. Was the settlement here a good faith settlement insofar as the settling parties are concerned? A quick answer to this question is that under the *Tech-Bilt* rule, the party objecting (Curtis) to the good faith settlement, claiming bad faith, has the burden of proof on this issue. Curtis has offered no evidence to sustain her claim that the total settlement agreement entered into by these parties is in bad faith as between the settling parties.

Certainly Curtis has established there is bad faith insofar as she is concerned if the court order is construed as a bar under section 877.6, subdivision (c). The factors pertaining to Curtis's relative liability, if any, are not shown to have been considered as the law requires before a good faith settlement could be made and legally sustained—at least as to her.

The Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates, supra,* 38 Cal.3d 488, has clarified the rules governing standards and procedures to be used in determining whether an agreement is made in good faith. The Supreme Court defined good faith in these words: "[W]hether

the amount of the *settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. This is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.'* (Cf. *Dompeling, supra,* 117 Cal.App.3d at p. 809.) Such a rule would unduly discourage settlements. 'For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' [Citation.] Moreover, such a rule would tend to convert the pretrial settlement approval procedure into a full-scale minitrial [citation].

"*But these considerations* do not lead to the conclusion that the amount of the settlement is irrelevant in determining good faith. Rather, the intent and policies underlying section 877.6 require that *a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement.* '[A] *defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.'* [Citation.] *The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute.* Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6.'' (*Id.* 38 Cal.3d at pp. 499-500, fn. omitted, italics added.) Defendants contend substantial evidence supports and requires our finding the order confirming the settlement agreement was made in good faith. The evidence supporting defendants' claim is to be found in the moving papers, points and authorities and the declaration of Attorney Brubaker (counsel for, inter alia, Church) submitted in support of the motion for confirmation. The declaration of Brubaker states, in part: "At all times relevant, the discussions and negotiations of settlement between the plaintiff and her lawyers, and the moving defendants participating in the proposed settlement, have been at arms

length. Beginning on December 14, 1983, and continuing through the finish of these negotiations, the effort of counsel on behalf of all parties and principals was directed by the Honorable William A. Yale, Judge Retired. Judge Yale's experience and abilities in mediating disputes and negotiating resolutions in similar cases was well known to everyone involved in this process and is well known in the community at large.

"[T]he settlement proposed is in the exact specifics recommended by Judge Yale as a result of his review of this case. . . .

"The combined structure and cash settlement detailed in this declaration is made in good faith. No other agreement exists between the parties to the settlement beyond that agreement which is reflected here." Defendants also urge additional proof that the settlement agreement was made in good faith is found in the fact they are paying "their fair share, since they contributed the entire limits of their liability insurance policy . . . ."

The settlement agreement for about $1.5 million provides for structure lifetime payments to Wendy as well as a lump-sum cash payment. Details of the settlement agreement placed before the court provide information concerning the amounts each of the settling defendant's respective insurers will pay on behalf of the defendants.

While there is little detailing of the procedural facts showing "good faith" by *Tech-Bilt* standard to support this settlement, yet the burden is on Curtis to show evidence of bad faith. This she has not done. (See *Tech-Bilt, Inc., supra,* 38 Cal.3d at p. 500.)

I would affirm the order (par. 1) confirming the settlement agreement as being made in good faith as to the signatory parties and approve the dismissal of the specified cross-complaints for indemnity or contribution.

As to Joni Curtis, the order of dismissal (par. 2), if it be interpreted *to bar her rights* for indemnity or contribution from the settling defendants, should be found to be void as a deprivation of her due process rights. It should be declared unenforceable as to Joni Curtis. Alternatively, this issue should not be now determined; this court should await the issue being appropriately raised by an aggrieved party.